# UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

**THIRD CIRCUIT CASE NO. 19-1715**
**DISTRICT OF NEW JERSEY CASE NO. 2:19-cv-07872**

SYED TAZU,

*Petitioner - Appellant*,

v.

WILLIAM P. BARR, in his official capacity as the Attorney General of the United States; THOMAS R. DECKER, in his official capacity as New York Field Office Director for U.S. Immigration and Customs Enforcement; STEVEN AHRENDT, in his official capacity as Warden of the Bergen County Jail; and the U.S. DEPARTMENT OF HOMELAND SECURITY,

*Respondents - Appellees.*

_____

## BRIEF FOR PETITIONER-APPELLANT

Jeremy Feigelson
Aasiya F.M. Glover
**Debevoise & Plimpton LLP**
919 Third Avenue
New York, NY 10022

Gregory P. Copeland, Legal Director
Sarah T. Gillman, Legal Director
**Rapid Defense Network***
11 Broadway, Suite 615
New York, NY 10004
*formerly NSC Community Legal Defense

# TABLE OF CONTENTS

INTRODUCTION ................................................................................1

STATEMENT OF JURISDICTION...................................................5

STATEMENT OF THE ISSUES........................................................5

STATEMENT OF RELATED CASES ...............................................6

STATEMENT OF THE CASE............................................................6

    A.    Background ..........................................................6

    B.    Provisional Waiver Process...................................7

    C.    Detention ............................................................9

    D.    Procedural History...............................................9

    E.    Summary Of Argument ......................................10

STANDARD OF REVIEW ...............................................................11

ARGUMENT .....................................................................................12

I.    The DHS May Not Remove Mr. Tazu Before He Completes The Provisional Waiver Process He Has A Right to Pursue. ..............12

II.    ICE Was Required To Provide Mr. Tazu With An Orderly Departure And A Revocation Interview.........................................18

    A.    Mr. Tazu Has The Right To Notice Of His Removal And To An Orderly Departure.................................19

    B.    Mr. Tazu Has A Right To A Revocation Review Upon ICE's Determination To Revoke His OSUP .................21

III.    Mr. Tazu Properly Filed A Statutory Motion To Reopen That He Has A Right To Pursue From The United States.................23

IV.   8 U.S.C. § 1252(g) Does Not Strip Article III Courts From Hearing
      This Habeas Petition. ...................................................................... 26

CONCLUSION ................................................................................. 30

# TABLE OF AUTHORITIES

CASES

*Alam v. Nielsen*, 312 F. Supp. 3d 574 (S.D. Tex. 2018)..........................22

*Alli v. Decker*, 650 F.3d 1007 (3d Cir. 2011) ...........................................17

*Araujo-Trujillo v. Att'y. Gen. of U.S.*, 739 Fed. Appx. 712 (3d Cir. 2018)..............24

*Arevalo v. Ashcroft*, 344 F.3d 1 (1st Cir. 2003).............................2, 10, 12

*Bolieiro v. Holder*, 731 F.3d 32 (1st Cir. 2013) ......................................24

*Calderon v. Sessions*, 330 F. Supp. 3d 944 (S.D.N.Y. 2018)...........................14, 17

*Castro v. U.S. Dep't. of Homeland Sec.*, 835 F.3d 422 (3d Cir. 2016) ..................12

*Chehazeh v. Att'y Gen. of U.S.*, 666 F.3d 118 (3d Cir. 2012) ................................27

*Compere v. Nielsen*, 358 F. Supp. 3d 170 (D.N.H. 2019) ......................................25

*De Jesus Martinez v. Nielsen*, 341 F. Supp. 3d 400 (D.N.J. 2018) ..................14, 28

*Desai v. Att'y Gen*, 695 F.3d 267 (3d Cir. 2012)........................................24

*Dinnall v. Gonzalez*, 421 F.3d 247 (3d Cir. 2005)....................................13

*Garcia v. Att'y Gen.*, 553 F.3d 724 (3d Cir. 2009).............................27, 28

*Gil-Almirola v. U.S. Att'y. Gen.*, 750 Fed. Appx. 859 (11th Cir. 2018).................24

*Jennings v. Rodriguez*, 138 S. Ct. 840 (2018) ........................................27

*Jimenez v. Nielsen*, 334 F. Supp. 3d 370 (D. Mass. 2018) ....................................14

*Kucana v. Holder*, 558 U.S. 233 (2010) ................................................3

*Leslie v. Att'y Gen. of U.S.*, 611 F.3d 171 (3d Cir. 2010)................................2, 13

*M'Bagoyi v. Barr*, No. 19-1717, 2019 WL 5450872 (M.D. Pa. October 24, 2019) ......................................................................*passim*

*Madar v. U.S. Citizen. and Immig. Servs.*, 918 F.3d 120 (3d Cir. 2019) ...............12

*Martinez v. Sec'y, U.S. Dep't of Homeland Sec.*, No. 18-3478, 2019 WL 2064450 (3d Cir. Feb. 15, 2019)........................................................................14

*Matthews v. Eldridge*, 424 U.S. 319 (1976) ....................................................19, 20

*Morton v. Ruiz*, 415 U.S. 199 (1974)..............................................................13

*Ortega-Marroquin v. Holder*, 640 F.3d 814 (8th Cir. 2011)................................25

*Prestol Espinal v. Att'y Gen.*, 653 F.3d 213 (3d Cir. 2011) ...............................23

*Ragbir v. Homan*, 923 F.3d 53 (2d Cir. 2019)..............................................29

*Ragbir v. Sessions*, 18-CV-236 (KBF), 2018 WL 623557 (S.D.N.Y. Jan. 29, 2018) ................................................................................................19, 20

*Rashid v. Mukasey*, 533 F.3d 127 (2d Cir. 2008) ............................................24

*Reno v. Am.-Arab Anti-Discrim. Committee*, 525 U.S. 471 (1999)......................27

*Rombot v. Souza*, 296 F. Supp. 3d 383 (D. Mass. 2017) .........................................19

*Rosenberg v. XM Ventures*, 274 F.3d 137 (3d Cir. 2001) ...................................17

*Sean B. v. McAleenan*, Civ. No. 19-10529 (KM), 2019 WL 4165309 (D.N.J. Sept. 3, 2019) ......................................................................................25

*Singh v. Holder*, 658 F.3d 879 (9th Cir. 2011) ..............................................25

*Succar v. Ashcroft*, 394 F.3d 8 (1st Cir. 2005) .........................................17

*Sylejmani v. Sessions*, 729 Fed. Appx. 317 (5th Cir. 2018) .................................24

*Toor v. Lynch*, 789 F.3d 1055 (9th Cir. 2015) .........................................23

*United States v. Higgins*, 128 F.3d 138 (3d Cir. 1997) .........................................17

*United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954)...............*passim*

*United States v. Hovsepian*, 359 F.3d 1144 (9th Cir. 2004).................................28

*Valdovinos-Lopez v. Attorney General of the U.S.*, 628 Fed. Appx. 817 (3rd Cir. 2015) .....................................................................................11, 24

*Villavicencio Calderon v. Sessions*, No. 18-2926, 2018 WL 6920377 (2d Cir. Oct. 5, 2018) ...................................................................................14

*Wanrong Lin v. Nielsen*, 377 F. Supp. 3d 556 (D. Md. 2019)................................28

*Yaide v. Wolf*, No. 19-CV-07874-CRB, 2019 WL 6896148 (N.D. Cal. Dec. 18, 2019) ...................................................................................28

*Zadvydas v. Davis*, 533 U.S. 678 (2001) ...................................................18

*Zheng v. Gonzales*, 422 F.3d 98 (3d Cir. 2008)............................................17

STATUTES

5 U.S.C. § 701 ..............................................................................5

8 U.S.C. § 1229a(c) ........................................................................23

8 U.S.C. § 1252(g) ...................................................................*passim*

28 U.S.C. § 1291 ...........................................................................5

28 U.S.C. § 1331 ...........................................................................5

28 U.S.C. § 1651 ...........................................................................5

28 U.S.C. § 2201 ...........................................................................5

28 U.S.C. § 2241 ...........................................................................5

OTHER AUTHORITIES

Fifth Amendment ...........................................................................5

8 C.F.R. § 212.7 ....................................................................*passim*

8 C.F.R. § 241.4(k) ...................................................................21, 22

8 C.F.R. § 241.4(l) .................................................................*passim*

8 C.F.R. § 241.13 .........................................................................19

8 C.F.R. § 1003.2(a) ......................................................................23

78 Fed. Reg. 536-01 ........................................................................8

81 Fed. Reg. 50244 ....................................................................................8, 16

Fed. R. App. P. 4(a)(1)(A) ................................................................................5

# INTRODUCTION

This appeal arises because the United States Department of Homeland Security ("DHS") disregarded its own regulations governing how a noncitizen, subject to a final order of removal, may seek lawful permanent residence. As a result, Appellant Syed Tazu has been deprived of his right to seek the relief that the DHS itself made available to him through its regulations.

Mr. Tazu fled Bangladesh nearly 30 years ago to escape severe political persecution. For decades he lived a stable, successful life here—raising a family that now includes two U.S.-born children who are citizens; holding a steady job; participating in community life; and never interacting with the criminal justice system. Although since June 10, 2003 he has been subject to a final order of removal, that order was imposed after proceedings that were sorely compromised by ineffective assistance of counsel. In June 2009, Mr. Tazu was issued an order of supervision ("OSUP") pursuant to which he periodically reported to Immigration and Customs Enforcement ("ICE"). For approximately eight years, the order of removal remained pending with no indication of enforcement. Over those years, Mr. Tazu made each and every required check-in with the immigration authorities. In January 2017, he began a process to legalize his immigration status by availing himself to relief made available by the Government to individuals who had a final order of removal but sought to remain with their family. Then, in

February 2019, Mr. Tazu suddenly was detained without notice or opportunity to respond, placed in removal proceedings, and transferred across state lines to be held pending removal. He then filed a motion to reopen his immigration proceedings on the basis of the ineffective assistance of counsel. Both the detention in preparation of removal while Mr. Tazu availed himself of his rights to seek these forms of immigration relief, and the manner in which Mr. Tazu was detained, have violated Mr. Tazu's constitutional due process rights and his rights under the Administrative Procedure Act ("APA").

This Court should enforce here the principle that when the Government creates a regulatory process for seeking relief, that process creates "a right to seek relief" even if, after due process is afforded, there is no "right to the relief itself." *Arevalo v. Ashcroft*, 344 F.3d 1, 15 (1st Cir. 2003) (citing *U. S. ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)). Further, the Government may not violate the right to seek relief by, in substance, precluding individuals from seeking it. *See id.*; *see also Leslie v. Att'y Gen. of U.S.*, 611 F.3d 171, 175 (3d Cir. 2010) ("Rules promulgated by a federal agency that regulate the rights and interests of others are controlling upon the agency.").

In this action, Mr. Tazu challenges the Government's legal authority to detain him without any prior notice or warning and then ready him for removal while he is pursuing the very process by which he is entitled to try to avoid

removal.  The regulations that grant immigrants with final removal orders a process to apply for immigration relief from the United States are appropriately construed as creating an enforceable individual right to seek that relief in a meaningful way.  The regulations would in substance be meaningless unless they are construed as barring ICE from removing Mr. Tazu until his request for relief is decided.  In addition, ICE's failure to provide notice or an opportunity to respond to the revocation of Mr. Tazu's OSUP prior to his removal violated the DHS's own regulations and Mr. Tazu's regulatory and due process rights.

The District Court in this case held that Mr. Tazu had no right to seek relief—a legal conclusion that is subject to *de novo* review in this Court, and that is legally incorrect in several respects.  Specifically, the District Court:  (*i*) failed to apply the doctrine developed in *Accardi* and subsequent cases holding that government agencies may not render their own regulations ineffective by precluding the ability to pursue immigration relief; (*ii*) erroneously held that Mr. Tazu's statutory motion to reopen was a discretionary regulatory motion that did not grant an entitlement to seek relief, when the motion should instead have been deemed statutory; and (*iii*) applied the wrong statute to Mr. Tazu's right to notice and opportunity to respond upon revocation of his OSUP and further incorrectly held that Mr. Tazu had no right to procedural due process because that due process would not prevent his removal.

On May 29, 2019, this Court ordered the parties to brief the basis for the District Court's jurisdiction in this case. The District Court is vested with jurisdiction over Mr. Tazu's habeas petition because he challenges the violation of his constitutional and statutory rights, not the discretionary choice to execute his final order of removal. Section 1252(g), which strips Article III courts of jurisdiction over certain immigration-related challenges, does not divest those courts of all claims related to removal orders, however tangential or rooted in constitutional and statutory violations. Moreover, reading Section 1252(g) to so strip jurisdiction would itself violate the Constitution by improperly suspending the writ of habeas corpus and denying petitioners like Mr. Tazu any forum in which to seek redress.

Mr. Tazu respectfully requests that this Court reverse the District Court's decision and hold that his removal violates (1) his due process interest in a resolution of his provisional waiver application; (2) his due process rights to notice and an opportunity to be heard, and to an orderly departure, concerning the revocation of his order of supervision; and (3) his due process right to resolution of his motion to reopen his immigration proceedings at the Board of Immigration Appeals ("BIA").

## STATEMENT OF JURISDICTION

The District Court and this Court have subject-matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, and 2241; the Suspension Clause; the All Writs Act, 28 U.S.C. § 1651; the APA, 5 U.S.C. § 701; and for injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. The District Court's federal question jurisdiction was based on an alleged violation of the Fifth Amendment to the United States Constitution and the APA.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. The final judgment that is being appealed disposed of all issues in this cause and was entered on March 29, 2019. On March 29, 2019, Mr. Tazu timely filed his notice of appeal. Fed. R. App. P. 4(a)(1)(A) (civil appeals must be filed within 30 days after entry of the order appealed from).

## STATEMENT OF THE ISSUES

1. Whether the constitutional right to seek relief offered by agency regulations precludes the DHS from removing Mr. Tazu before he completes the provisional waiver process.

2. Whether the District Court erred in holding that ICE was not required to provide Mr. Tazu with notice of the revocation of his release and with an orderly departure.

3.  Whether the District Court erred in holding that Mr. Tazu's motion to reopen was a regulatory, rather than statutory, motion to reopen.

## STATEMENT OF RELATED CASES

This case has never previously been before this Court.

## STATEMENT OF THE CASE

### A.    Background

Appellant Syed Tazu entered the country in 1993 and immediately applied for asylum based on political persecution he and his family experienced in Bangladesh.  His asylum application was handled by what the District Court described as what appeared to be "ineffective counsel at almost every step of his immigration proceedings." ( JA6.)  The BIA denied Mr. Tazu's request for asylum in 2003, ten years after Mr. Tazu first arrived in the United States.  By then, he and his wife had two U.S. citizen children and remained in the United States.  In 2009, the Government detained Mr. Tazu for months before releasing him on an OSUP that permitted him to stay in the United States with his family, seek employment authorization, and report for check-ins with ICE.  During this time, as the District Court explained, Mr. Tazu was a "model supervisee:  He has consistently complied with his order of supervision and has never missed an interview; he has no criminal record; he has maintained a steady job; he has paid his taxes; he has instilled a love for education in his children; and he is a productive and beloved member of his community."  (JA6.)

In 2017, Mr. Tazu learned of the provisional waiver process from former counsel and filed the first of three required forms, a Form I-130, with U.S. Citizenship and Immigration Service ("USCIS") on January 6, 2017. (JA132–133.) USCIS approved the Form I-130 on September 13, 2017. (JA172.) Mr. Tazu's then-counsel did not advise him of the additional steps he needed to take to advance this process. ( JA261 ¶ 4.)

On February 14, 2019, after nearly 10 years under the OSUP without any interaction with criminal justice system, Mr. Tazu reported for an OSUP check-in with ICE. He was detained without prior notice or an opportunity to put his affairs in order, placed in removal proceedings, and transferred across state lines to be held in county jail pending removal. On March 6, 2019, Mr. Tazu filed a Form I-212, the second form in the provisional waiver process. (JA665–675.) Upon learning of Mr. Tazu's four prior ineffective counsel, on March 20, 2019, Mr. Tazu's present counsel filed a motion to reopen his immigration proceedings with the BIA. (*See* JA355–657.)

### B.    Provisional Waiver Process

Generally, noncitizens who have been ordered removed from the United States are inadmissible for re-entry for a number of years, ranging from five to twenty years, based on the circumstances of their removal. *See M'Bagoyi v. Barr*, No. 19-1717, 2019 WL 5450872, at *3 (M.D. Pa. October 24, 2019), *appeal filed*

(3d Cir. Dec 19, 2019).  As long as a noncitizen is "inadmissible," he or she is ineligible to receive a visa to be admitted as a lawful permanent resident of the United States, though inadmissibility may be waived by the consent of the Secretary of the Department of Homeland Security.  This waiver process can take well over a year and, prior to 2013, required a noncitizen applying for that waiver to first leave the United States.  *Id*.

The DHS promulgated a rule change in 2013 "to allow certain immediate relatives of U.S. citizens who are physically present in the United States to request provisional unlawful presence waivers prior to departing from the United States for consular processing of their immigrant visa applications."  78 Fed. Reg. 536-01, 536 (Jan. 3, 2013).  The express purpose of this change was to "significantly reduce the time that U.S. citizens are separated from their immediate relatives," *id*., and to "encourage immediate relatives who are unlawfully present to initiate actions to obtain an immigrant visa to become [lawful permanent residents]."  *Id*. at 568.  The DHS promulgated a further rule change in 2016, extending eligibility for the provisional unlawful presence waivers to individuals with final removal orders, like Mr. Tazu.  81 Fed. Reg. 50244.

The provisional waiver process amounts to a three-step process, commencing when a noncitizen's U.S. citizen relative files a Form I-130 "Petition for Alien Relative" to request that the Government recognize the noncitizen as the

citizen's immediate relative. If the I-130 is approved, the noncitizen files a Form

I-212 "Application for Permission to Reapply for Admission" to request

permission to reapply for admission into the United States. Finally, the noncitizen

files a Form I-601A "Application for Provisional Unlawful Presence Waiver" to

request the provisional waiver of inadmissibility. Per governing federal

regulations, the noncitizen must be "present in the United States at the time of

filing the application for a provisional unlawful presence waiver," as a criterion for

eligibility. 8 CFR 212.7(e)(3)(i); *see also* Form I-601A. A noncitizen is granted a

provisional waiver if all three forms are approved and must then depart the United

States to begin the visa application process. *See* 8 CFR 212.7(e)(4)(iv); *M'Bagoyi*,

2019 WL 5450872, at *3.

### C. Detention

Mr. Tazu was first detained without warning on February 14, 2019 while

reporting for a routine supervision meeting at 26 Federal Plaza in New York City

and then transferred to Bergen County Jail in Hackensack, New Jersey in

anticipation of his removal. On May 16, 2019, Mr. Tazu was released on bond.

### D. Procedural History

On February 25, 2019, shortly after his detention, Mr. Tazu filed a habeas

corpus petition in the Southern District of New York, the jurisdiction in which he

was taken into custody. On March 1, 2019, the case was transferred by consent to

the District of New Jersey. On March 29, 2019, the District Court issued an order denying Mr. Tazu's petition, and on the same day, Mr. Tazu filed a notice of appeal with this Court.

### E.    Summary Of Argument

This Court should vacate the District Court's order denying Mr. Tazu's habeas motion for three reasons.

*First*, in denying Mr. Tazu's habeas petition, the District Court failed to apply the *Accardi* doctrine, which requires government agencies to act in accordance with their own regulations and exercise the discretion with which they are empowered. When the Government created a regulatory process for seeking the provisional waiver, that process created "a right to seek relief" even though there is no "right to the relief itself." *Arevalo*, 344 F.3d at 15. Here, the DHS established a process for individuals like Mr. Tazu to seek lawful permanent residency by applying for a provisional waiver, the stated purpose of which is to keep families of U.S. citizens together, rather than subjecting them to years of separation while immediate family members of U.S. citizens seek lawful permanent resident status. Mr. Tazu has duly begun this process, and removal would frustrate the intent and purpose of the provisional waiver process and deny him his right to pursue it.

*Second*, the District Court erred in holding that Mr. Tazu was not entitled to an orderly departure or notice and opportunity to respond to the revocation of his OSUP. The District Court erroneously held that the right to an orderly departure only vests when explicitly promised by the DHS in an OSUP, even though courts construing DHS's regulations explain that the right to an orderly departure for supervisees derives from fundamental principles of due process, not from the text of an individual OSUP document. Further, the applicable federal regulations mandate that, when an OSUP is revoked, a supervisee must be granted a revocation interview, and the District Court erred in applying the wrong subsection to hold otherwise. *See* 8 C.F.R. § 241.4(l)(1), (3).

*Third*, the District Court erred in holding that Mr. Tazu's motion to reopen was regulatory, subject to review at the BIA's discretion, and so did not entitle Mr. Tazu to that process. In so holding, the District Court ignored governing case law—including in this Circuit—holding that motions arising from ineffective assistance of counsel claims are statutory motions that the BIA is required to review. *See, e.g., Valdovinos-Lopez v. Att'y Gen. of the U.S.*, 628 Fed. Appx. 817, 820 (3d Cir. 2015).

## STANDARD OF REVIEW

The District Court's holdings on each of Mr. Tazu's claims are reviewable *de novo*, as they interpreted federal regulations, statutes, and the United States

Constitution.  *See Madar v. U.S. Citizen. and Immig. Servs.*, 918 F.3d 120, 122 (3d

Cir. 2019) (District Court's legal conclusions in a § 2241 habeas petition are

reviewable *de novo*); *Castro v. U.S. Dep't. of Homeland Sec.*, 835 F.3d 422, 429

(3d Cir. 2016) (issues of textual interpretation in immigration cases are reviewable

*de novo*).

## ARGUMENT

### I.     The DHS May Not Remove Mr. Tazu Before He Completes The Provisional Waiver Process He Has A Right to Pursue.

The District Court erroneously held that the DHS could remove Mr. Tazu

from the United States before he had exhausted his right to seek relief through the

provisional waiver process.  In so doing, the District Court misconstrued Mr.

Tazu's argument, concluding: (*i*) USCIS is not required to adjudicate applications

submitted to it, and (*ii*) the regulatory language and history demonstrate that DHS

did not intend to grant a stay of removal authorized by the Secretary.  (JA15–16.)

As Mr. Tazu explains below, because the Government created a regulatory

process for seeking relief through the provisional waiver process Mr. Tazu is

pursuing, Mr. Tazu has a vested "right to seek relief" even though there is no "right

to the relief itself."  *Arevalo*, 344 F.3d at 15 (citing *Accardi*, 347 U.S. at 268).  The

Supreme Court in *Accardi v. Shaughnessy* explained that Government agencies

tasked with the exclusive jurisdiction to exercise discretion over applications for

relief (such as the provisional waiver process) *must* exercise that discretion.  *See*

*Accardi*, 347 U.S. at 266–68 ("And if the word "discretion" means anything in a statutory or administrative grant of power, it means that the recipient must exercise his authority according to his own understanding and conscience.").  Further, the DHS's "agency power to make rules that affect substantial individual rights and obligations" requires it to "remain consistent with the governing legislation" and "employ procedures that conform to the law" when administering its own regulations, such as Section 212.7.  *Morton v. Ruiz*, 415 U.S. 199, 232, (1974) (internal citations omitted); *see also Leslie*, 611 F.3d at 175 ("[R]ules promulgated by a federal agency that regulate the rights and interests of others are controlling upon the agency.").

Because DHS granted noncitizens under final orders of removal the right to pursue the discretionary relief of the provisional waiver process, DHS may not employ removal procedures that prevent USCIS from exercising its discretion and that forever deprive noncitizens of their right to seek that relief.  *See* 8 CFR § 212.7; *see also Dinnall v. Gonzalez*, 421 F.3d 247, 261 (3d Cir. 2005) (holding that an agency action that would forever preclude a noncitizen from applying for discretionary immigration relief was impermissible, even if the noncitizen "ha[d] no guarantee of a favorable decision.")

The Third Circuit has never been called upon to decide whether the general rule against revoking a right to seek relief granted through agency regulations

extends to these regulations in Section 212.7, which grant the right to pursue the provisional waiver process. However, multiple district courts have held that individuals pursuing that process do have the due process right to complete it. *See, e.g.*, *De Jesus Martinez v. Nielsen*, 341 F. Supp. 3d 400, 409-10 (D.N.J. 2018) ("These regulations create a 'right to seek' the provisional waiver even when there is no 'right to the [waiver] itself.'"), *appeal dismissed sub nom. Martinez v. Sec'y, U.S. Dep't of Homeland Sec.*, No. 18-3478, 2019 WL 2064450 (3d Cir. Feb. 15, 2019); *Calderon v. Sessions*, 330 F. Supp. 3d 944, 957-58 (S.D.N.Y. 2018) (holding that the petitioner had a right to apply for a provisional unlawful presence waiver because "DHS has promulgated, through a notice and comment process, detailed regulations that make available a process for obtaining a provisional unlawful presence waiver of inadmissibility to aliens with outstanding final orders of removal.") (internal quotations omitted), *appeal withdrawn sub nom. Villavicencio Calderon v. Sessions*, No. 18-2926, 2018 WL 6920377 (2d Cir. Oct. 5, 2018); *M'Bagoyi*, 2019 WL 5450872 at *5 ("Failing to allow the petitioner the right to seek such a waiver without justification constitutes a lack of regard for the regulations that DHS has created.") (emphasis added); *Jimenez v. Nielsen*, 334 F. Supp. 3d 370, 387 (D. Mass. 2018) ("The court concludes that 8 C.F.R. § 212.7 requires DHS, acting through ICE, to consider an eligible alien's application for a

provisional unlawful presence waiver before deciding to remove him or her from the United States.").

The District Court in this case, however, held that Mr. Tazu has no due process right to seek the relief granted in Section 212.7 because: (*i*) the District Court distinguished *Accardi*, concluding that "the underlying regulation contains no language requiring USCIS to exercise its discretion, even when an applicant meets the requirements"; and (*ii*) "even assuming that the regulation creates a legitimate entitlement to obtaining a decision on the provisional waiver application, Petitioner here does not yet have a vested interest in that entitlement" because Mr. Tazu's Form I-212 had not yet been granted. (JA16–18.) However, the District Court failed to give effect to the full text and history of Section 212.7, which make clear that DHS may not remove noncitizens if removal would prevent USCIS from exercising its discretion or forever prevent individuals from pursuing relief offered by the agency.

*First*, the District Court erroneously held that, unlike the regulations in *Accardi*, Section 212.7 does not require USCIS to exercise its discretion, only providing that "USCIS *may* adjudicate applications." (JA16.)   The use of the word "may," however, does not absolve USCIS from making a decision on the applications before it, or give DHS permission to prevent USCIS from adjudicating.  Rather, the subsection cited by the District Court employs the word

"may" to explain which applications USCIS is empowered to adjudicate, *see* §

212.7(e)(2)(i) ("USCIS may adjudicate applications for a provisional unlawful

presence waiver of inadmissibility based on section 212(a)(9)(B)(v) of the Act

filed by eligible aliens described in paragraph (e)(3) of this section.").  Moreover,

the District Court ignored the language of Section 212.7(e) that describes the

adjudication procedure using mandatory terminology:  "USCIS *will* adjudicate a

provisional unlawful presence waiver application in accordance with this

paragraph and section 212(a)(9)(B)(v) of the Act."  § 212.7(e)(8) (emphasis

added).

*Second*, the District Court misinterpreted the regulatory history of 8 C.F.R.

§ 212 to conclude that because *DHS* did not intend to grant the right to a stay

authorized by its Secretary, no *constitutional* due process right to a stay attached.

(JA16–17.)  As an initial matter, the District Court misconstrued DHS's limited

comment on Section 212.7 that no due process right vests in the provisional *waiver*

as a broader interpretation that there is no due process right to pursue the *process*

to seek the provisional waiver.  *See* (JA18); *cf.* 81 Fed. Reg. 50244, at 50258

(explaining that DHS need not permit appeals or reconsideration of denials of

provisional waiver applications because it believes there is no due process right to

such waivers).

Whatever the DHS's intent, however, that intent does not override the purpose and intent of the regulations when taken as a whole. *See United States v. Higgins*, 128 F.3d 138, 142 (3d Cir. 1997) ("A statute or regulation should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error."); *Zheng v. Gonzales*, 422 F.3d 98, 103 (3d Cir. 2008) ("The Attorney General's power is not unlimited, and must be exercised consistently with the intent of the statute."); *see also Alli v. Decker*, 650 F.3d 1007, 1011 (3d Cir. 2011) (citing *Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001)).

Removal of Mr. Tazu in this case would frustrate the stated intent of the regulation to prevent family separation and encourage immediate relatives to obtain immigrant visas, and negate the purpose of Section 212.7 by precluding him from ever seeking relief through the provisional waiver process created for individuals like him. *See* 8 C.F.R. 212.7(e)(3)(i) (requiring applicants to be in the United States at the time of application); Form I-601A (same); *see also Succar v. Ashcroft*, 394 F.3d 8, 20 (1st Cir. 2005) (reversing a district court decision where the "effect [would] preclude an alien from even applying for relief" to which he is entitled under a statute or regulation); *see also Calderon v. Sessions*, 330 F. Supp. 3d 944, 951 (S.D.N.Y. 2018) (holding that it "should not be difficult to discern that

families should be kept together rather than be separated by the thoughtless and cruel application of a so called 'zero tolerance' policy," especially where the "organization seeking removal has also provided a pathway for a person in Petitioner's position to regularize his immigration status with minimal disruption to his family life.").

Removal prior to final adjudication of the provisional waiver process would therefore render the regulation null and turn a clear process to keep families together into an arbitrary and capricious exercise of family separation. *See also id.*, (noting that such a "mercurial exercise of executive power" would "violate the APA and the U.S. Constitution.") The fact that Mr. Tazu's I-212 Form has not been granted does not change this analysis; once he filed his Form I-130, Mr. Tazu began the process to which the regulations entitle him, and removal would forever bar him from exhausting that process, depriving him of the right to seek the relief offered by DHS.

## II.    ICE Was Required To Provide Mr. Tazu With An Orderly Departure And A Revocation Interview.

Mr. Tazu is entitled to due process, even during detentions following a final order of removal. *See Zadvydas v. Davis*, 533 U.S. 678 (2001). The District Court erred in denying Mr. Tazu's due process claim that when ICE revoked his OSUP, he was entitled to a revocation interview and orderly departure.

### A. Mr. Tazu Has The Right To Notice Of His Removal And To An Orderly Departure

The District Court incorrectly held that because Mr. Tazu's order of supervision did not contain an explicit promise that he would "be given an opportunity to prepare for an orderly departure," Mr. Tazu had no right to that opportunity, distinguishing Mr. Tazu's OSUP from those in two cases Mr. Tazu cited before the District Court. (JA21.) While words in an OSUP may reinforce the right to such orderly departure processes, they are not the legal mechanism that creates those processes. *See* 8 C.F.R. §§ 241.4(l)(1); 8 C.F.R. §§ 241.13(i)(3).

In any event, the cases cited by Mr. Tazu before the District Court do not rely solely on the language in the petitioners' OSUPs. For example, before the District Court, Mr. Tazu relied upon *Rombot v. Souza*, which also held that ICE had violated the petitioner's constitutional rights because ICE had violated its regulations. 296 F. Supp. 3d 383, 388 (D. Mass. 2017) ("ICE, like any agency, 'has the duty to follow its own federal regulations.'"). Similarly, the existence of such a provision in *Ragbir v. Sessions*, which Mr. Tazu also relied upon, was not the sole basis for the court's decision in that case. 18-CV-236 (KBF), 2018 WL 623557 at *2 (S.D.N.Y. Jan. 29, 2018) *appeal dismissed sub nom*, *Ragbir v. Barr*, 18-1595, 2019 WL 6826008 (2d Cir. July 30, 2019). Rather, *Ragbir* rested its reasoning on more fundamental principles of due process. *See id*. Quoting the Supreme Court case, *Matthews v. Eldridge*, the *Ragbir* court emphasized that "due

process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. [D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Id*. at *2, n.7 (quoting *Matthews v. Eldridge*, 424 U.S. 319, 334 (1976)). The *Ragbir* court, under the totality of the circumstances, determined the circumstances of the petitioner's detention and removal insufficient. *Id*. at *2-3.

The method of the Government's apprehension of Mr. Tazu was nearly identical to that described in *Ragbir*. *See id*. at *2. Much like the situation in *Ragbir*, ICE has not shown that it had any evidence to believe Mr. Tazu would not have left on his own if given proper notice to do so, nor that he would have fled or hidden to avoid leaving. *See id*. at *3. ICE has not shown that Mr. Tazu conducted himself any less than lawfully for almost two decades. (JA6); *see Ragbir*, 2018 WL 623557 at *3. Moreover, Mr. Tazu experienced additional hurdles not experienced by the petitioner in *Ragbir*, for Mr. Tazu was quickly transferred to a jail across state lines in the District of New Jersey, located far from his family and his legal team, increasing the complications of putting his affairs in order. The District Court thus erred by holding that the Due Process Clause and the APA did not create the right to notice and an orderly departure.

**B.  Mr. Tazu Has A Right To A Revocation Review Upon ICE's Determination To Revoke His OSUP**

The District Court erred when it applied the wrong section of  8 C.F.R. § 241.4 to deny Mr. Tazu's right to an OSUP revocation review and held that the DHS could suspend Mr. Tazu's revocation review without explanation.

Federal Regulation 8 C.F.R. § 241.4(l) governs procedures for the revocation of an OSUP, pursuant to which Mr. Tazu, who was non-detained under an OSUP, was entitled to a revocation interview with immigration officials.  *See* 8 C.F.R. § 241.4(l)(2) ("The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously released under the procedures in this section.").

The procedures laid out in Section 241.4(l) are clear.  This provision requires notification of a records review as well as "scheduling of an interview, which will ordinarily be expected to occur within approximately three months after a release is revoked."  *Id*.  That interview will then include "a final evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release."  *Id*.

The District Court, however, incorrectly analyzed a separate section, Section 241.4(k)(3)—which applies to detained individuals, not those whose release is revoked.  8 C.F.R. § 241.4(k) (discussing reviews "in the case of an alien who is in the custody of the Service").  The District Court relied upon the

reasoning of a single case from the Southern District of Texas, *see* (JA21-22 (citing *Alam*, 312 F. Supp. 3d 574, 581 (S.D. Tex. 2018))), to hold that in a situation where a petitioner's removal is imminent, immigration authorities may suspend the right to an interview under § 241.4(k)(3). 8 C.F.R. § 241.4(l) by contrast, requires a revocation interview whether removal is imminent or not. Section 241.4(l), however, requires that, only *after* the above-explained notice and interview, "custody reviews will be conducted annually under the provisions of paragraphs (i), (j), and (k) of this section," clarifying that custody reviews under Section 241.4(k) only take place *after* DHS has met its obligations under 241.1(l).

The District Court further erred in denying Mr. Tazu's claim on the basis that he had no cognizable claim against removal, reasoning that Mr. Tazu's "opportunity to respond to the reasons for revocation," *see* 8 C.F.R. § 241.4(l)(1), would be fruitless since he would have been unable to "show that his removal [was] not reasonably foreseeable." (JA22–23.) This analysis makes Mr. Tazu's right to due process contingent on the separate question of the likelihood of success at the end of that process. Under the District Court's reasoning, only individuals who would eventually succeed in responding to the revocation have a due process right to the revocation interview. In any event, the District Court failed to consider that Mr. Tazu could have contested his removal by citing his due process rights to pursue the provisional waiver process.

### III.  Mr. Tazu Properly Filed A Statutory Motion To Reopen That He Has A Right To Pursue From The United States.

The District Court held that Mr. Tazu had no right to remain in the United States pending a final decision on his motion to reopen, concluding incorrectly that Mr. Tazu had no statutory right to file a motion to reopen.  However, the District Court's holding depended on a misunderstanding of the type of motion to reopen Mr. Tazu had filed, mislabeling Mr. Tazu's statutory motion to reopen as a regulatory motion to reopen reviewed *sua sponte*.  (JA10–12.)

Immigration law recognizes two types of motions to reopen:  statutory motions to reopen pursuant to 8 U.S.C. § 1229a(c)(7)(A) and regulatory motions to reopen pursuant to 8 C.F.R. § 1003.2(a).  A statutory motion to reopen must be filed within 90 days of the final administrative decision on the immigrant's case. *See* 8 U.S.C. §§ 1229a(c)(7)(A) and 1229a(c)(7)(C)(i).  The statutory motion to reopen is an important procedural safeguard "intended to ensure a proper and lawful disposition of immigration proceedings."  *Kucana v. Holder*, 558 U.S. 233, 242 (2010); *see also Prestol Espinal v. Att'y Gen.*, 653 F.3d 213, 224 (3d Cir. 2011) (invalidating a regulation that barred post-departure motions to reopen on the ground that it curtailed the statutory right to file a motion to reopen); *Toor v. Lynch*, 789 F.3d 1055, 1061 (9th Cir. 2015).  Regulatory motions to reopen, however, are, with certain defined exceptions, any motion to reopen filed after the time bar, or subsequent to a previous statutory motion to reopen.  They are

reviewed by the BIA on a *sua sponte* basis. *See Desai v. Att'y Gen.*, 695 F.3d 267, 270 (3d Cir. 2012).

In holding that Mr. Tazu's motion to reopen was regulatory, the District Court appears to have overlooked case law in this Circuit and the Second Circuit (where Mr. Tazu's motion to reopen is being heard), holding that otherwise-barred motions to reopen are statutory when equitably tolled for ineffective assistance of counsel. *See Araujo-Trujillo v. Att'y. Gen. of U.S.*, 739 Fed. Appx. 712, 716 (3d Cir. 2018) (unpublished) (a petitioner's motion to reopen can still be statutory, even when time- and number-barred, as ineffective assistance of counsel "can be a basis to equitably toll the limitations period for a motion to reopen, provided the alien raising such a claim exercised due diligence in pursuing it"); *Rashid v. Mukasey*, 533 F.3d 127, 130 (2d Cir. 2008) (under the doctrine of equitable tolling, ineffective assistance of counsel can provide petitioners "additional time beyond the limitations period for a motion to reopen and relieve a petitioner from the numerical bar"). *See also Gil-Almirola v. U.S. Att'y. Gen.*, 750 Fed. Appx. 859, 861-62 (11th Cir. 2018); *Sylejmani v. Sessions*, 729 Fed. Appx. 317, 320-21 (5th Cir. 2018); *Valdovinos-Lopez*, 628 Fed. Appx. at 820 (holding the BIA committed an error of law because it "mistakenly believed that equitable tolling was simply a factor to take into account . . . rather than a factor that would extend the 90-day deadline for statutory motions"); *Bolieiro v. Holder*, 731 F.3d 32, 39-40 (1st Cir.

2013); *Singh v. Holder*, 658 F.3d 879, 884 (9th Cir. 2011) ("If an alien qualifies for equitable tolling of the time and/or numerical limitations on a motion to reopen, the motion is treated as if it were the one the alien is statutorily entitled to file"); *Ortega-Marroquin v. Holder*, 640 F.3d 814, 819 (8th Cir. 2011) ("To fall within the scope of the motion-to-reopen statute, Ortega must show that the filing deadline is subject to equitable tolling, thereby excusing its lateness.").

Removing Mr. Tazu during the pendency of his motion to reopen process would violate his right to that process because it would effectively render him unable to litigate his motion. *See Sean B. v. McAleenan*, No. 19-10529, 2019 WL 4165309, at *13-14 (D.N.J. Sept. 3, 2019) (holding petitioner who filed statutory motion to reopen could not be removed "until administrative proceedings are concluded and an appeal may be taken to the Court of Appeals, if necessary"); *Compere v. Nielsen*, 358 F. Supp. 3d 170, 173 (D.N.H. 2019) (granting petitioner a stay of removal "because removing him to Haiti before he can litigate his motion to reopen would violate his rights under federal law"). Removal will subject Mr. Tazu to the same severe mental distress he suffered as a result of his persecution in Bangladesh, and which resurfaced during his detention in 2019. (JA414–420.) Like the appellant in *Compere*, Mr. Tazu would face a hostile political environment in Bangladesh, one in which he previously was beaten and hospitalized for his political activities. *See* 358 F. Supp. 3d at 173; (JA422–423 ¶¶

2–4; JA838–880 (reporting that Bangladesh continues to practice the extrajudicial jailing, prosecution, and torture of opposition political parties). )

## IV.   8 U.S.C. § 1252(g) Does Not Strip Article III Courts From Hearing This Habeas Petition.

Pursuant to this Court's May 29, 2019 Order directing the parties to brief the issue of whether 8 U.S.C. § 1252(g) divests the District Court of jurisdiction to enjoin Mr. Tazu's removal, Mr. Tazu here explains that it does not.

The District Court held that the REAL ID Act, specifically 8 U.S.C. § 1252(g), does not preclude Article III courts from exercising jurisdiction over Mr. Tazu's claims.  (JA39–45.)  The relevant text of Section 1252(g) states, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  The Government argued below that Mr. Tazu's claims constitute a challenge to ICE's authority to execute his removal order, and therefore cannot be brought under Section 1252(g).  *See* (JA289–293.)  However, Mr. Tazu does not challenge the validity of his removal order, but rather raises an independent challenge under the APA and the due process clause, challenging detention and removal while pursuing various legal processes held out by DHS.  *See* (JA41–42, 339.)

The District Court's decision follows Third Circuit and Supreme Court precedent narrowly construing Section 1252(g) to preclude district court jurisdiction only for the three enumerated actions arising from the Secretary's discretionary decision-making. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) ("We did not interpret this language [in 1252(g)] to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves."); *Chehazeh v. Att'y Gen. of U.S.*, 666 F.3d 118, 134 (3d Cir. 2012) ("[I]t is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings."); *Garcia v. Att'y Gen.*, 553 F.3d 724, 729 (3d Cir. 2009) quoting *Reno v. Am.-Arab Anti-Discrim. Committee* (*AADC*), 525 U.S. 471, 482 (1999). Section 1252(g) is not a "zipper" clause that prevents judicial review of all actions related to deportation proceedings. *See Garcia*, 553 F.3d at 729. Mr. Tazu's questions "do not ask why the secretary chose to execute his removal order, but whether [Appellees] did so in accordance with the law." *See* Oral Arg. Trans., 20 (ECF 40). As the District Court held, this is not one of the "narrow" classes of noncitizen challenges to "discrete actions" of the Attorney General barred by Section 1252(g). *See AADC*, 525 U.S. at 482.

Mr. Tazu does not contest the discretion exercised to remove him, but rather ICE's legal authority to detain him in preparation for removal in violation of his due process and statutory rights to pursue immigration relief.  *See* (JA339–341.) *See* Reply Brief, 16 (ECF 29).  This question, while tangential to other exercises of the Attorney General's discretionary authority, is not barred by Section 1252(g). *See id.* (citing *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004)); *see also Garcia*, 553 F.3d at 729; *De Jesus Martinez*, 341 F. Supp. 3d at 408.

Since the District Court issued its ruling on this issue in March of 2019, other district courts have endorsed this reading of Section 1252(g).  *See M'Bagoyi v. Barr*, 2019 WL 5450872 at *4-5 (finding jurisdiction because petitioner's challenge "was not to ICE's prosecutorial discretion in executing removal orders, but to the legal authority of ICE to exercise such discretion when the subject of the removal order also has a right to seek relief made available by the DHS"); *Wanrong Lin*, 377 F. Supp. 3d at 563 (finding jurisdiction because petitioners only "ask for the opportunity to complete the provisional waiver process provided for in DHS's own regulations" and "do not challenge whether or how the Attorney General may decide to remove" the petitioner); *Yaide v. Wolf*, No. 19-CV-07874-CRB, 2019 WL 6896148, at *3 (N.D. Cal. Dec. 18, 2019) (finding jurisdiction because petitioner's "due process claim alleges 'constitutional or statutory error in

the removal process,' and is not an attempt 'to change the discretionary result reached by the INS'").

Even if this Court holds that Section 1252(g) divests Article III courts of jurisdiction over Mr. Tazu's claims, the Suspension Clause still guarantees him the right to petition for a writ of habeas corpus in a federal court. No other federal or administrative procedure exists to hear Mr. Tazu's claims; he challenges constitutional and statutory violations, and he does not request alteration of his immigration status. In any event, he is already subject to a final order of removal and would have no procedural mechanism to place his claims before an immigration court or petition for review of the order of removal on the basis of the claims raised here. Holding that 1252(g) strips the district courts of jurisdiction over Mr. Tazu's claims would therefore prevent Mr. Tazu from ever seeking habeas relief, depriving him of his constitutional right to petition for a writ of habeas corpus. *See Ragbir v. Homan*, 923 F.3d 53, 73 (2d Cir. 2019) ("Because Congress has provided no "adequate substitute" and because there has been no formal suspension of the writ, [petitioner] is entitled to a habeas corpus proceeding as to the basis for the Government's impending action to deport him.").

## CONCLUSION

This Court should find that it has jurisdiction over Mr. Tazu's claims and reverse the decisions of the District Court denying his claims to: (*i*) the right to pursue the provisional waiver process; (*ii*) a revocation interview and or orderly departure upon revocation of his OSUP; and (*iii*) the right to pursue his statutory motion to reopen.


Dated this 15 day of January, 2020.

Respectfully submitted,
*/s/ Jeremy Feigelson*
Jeremy Feigelson
Aasiya F.M. Glover
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
Phone: (212) 909-6000


Gregory P. Copeland, Legal Director
Sarah T. Gillman, Legal Director
Rapid Defense Network
11 Broadway, Suite 615
New York, NY 10004
Phone: (212) 843-0910
Fax: (212) 257-7033

*Counsel for Appellant*

**CERTIFICATE OF COMPLIANCE**
**PURSUANT TO FED. R. APP. P. 32(a)(7)(C)**

This brief contains 6992 words, including headings, footnotes, and

quotations, as calculated by Microsoft Word, and therefore complies with the

requirements of Fed. R. App. P. 32(a)(7)(B).


*/s/ Jeremy Feigelson*
Jeremy Feigelson
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
Phone: (212) 909-6000

**CERTIFICATION OF BAR MEMBERSHIP**

I hereby certify that I am a member of the bar of the United States Court of

Appeals for the Third Circuit.

/s/ *Jeremy Feigelson*
Jeremy Feigelson
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
Phone:  (212) 909-6000

**CERTIFICATION OF SERVICE**

I hereby certify that, on January 15, 2020, I electronically filed the foregoing brief via the CM/ECF system for the United States Court of Appeals for the Third Circuit, which automatically sent a notification of such filing to all counsel of record.

As per Fed. R. App. P. 25(a)(2)(B)(ii), I sent copies of the foregoing brief to the Office of the Clerk of Court and to all Appellants' counsel of record for delivery within three days.

/s/ *Jeremy Feigelson*
Jeremy Feigelson
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
Phone: (212) 909-6000

## CERTIFICATION OF IDENTICAL BRIEFS

I hereby certify that the electronically filed version of this brief and the hard copies of the brief sent to the Clerk of Court and Appellants' counsel are identical.

> _/s/ Jeremy Feigelson_____
> Jeremy Feigelson
> Debevoise & Plimpton LLP
> 919 Third Avenue
> New York, NY 10022
> Phone:  (212) 909-6000

# L.A.R. 31.1 CERTIFICATION

CASE NAME: *Tazu v. Barr, et. al.*

DOCKET NUMBER: 19-1715

I, Jeremy Feigelson, pursuant to L.A.R. 31.1 (c), certify that our firm's technology systems have scanned for viruses the PDF version of this document and no viruses were found.

The virus detection program used was Symantec Endpoint Protection, Version 14.

/s/ *Jeremy Feigelson*
Jeremy Feigelson
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
Phone:  (212) 909-6000