# UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

**THIRD CIRCUIT CASE NO. 19-1715
DISTRICT OF NEW JERSEY CASE NO. 2:19-cv-07872**

SYED TAZU,

*Petitioner - Appellant,*

v.

WILLIAM P. BARR, in his official capacity as the Attorney General of the United States; THOMAS R. DECKER, in his official capacity as New York Field Office Director for U.S. Immigration and Customs Enforcement; STEVEN AHRENDT, in his official capacity as Warden of the Bergen County Jail; and the U.S. DEPARTMENT OF HOMELAND SECURITY,

*Respondents - Appellees.*

_____

## <u>REPLY BRIEF FOR PETITIONER - APPELLANT</u>

Jeremy Feigelson
Aasiya F.M. Glover
**Debevoise & Plimpton LLP**
919 Third Avenue
New York, NY 10022

Gregory P. Copeland, Legal Director
Sarah T. Gillman, Legal Director
**Rapid Defense Network***
11 Broadway, Suite 615
New York, NY 10004
*formerly NSC Community Legal Defense

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

ARGUMENT .....................................................................................................3

I.      This Court Has Jurisdiction To Review Mr. Tazu's Statutory
And Constitutional Due Process Claims. ...............................................3

      A.     The Jurisdiction-Stripping Language Of 8 U.S.C. § 1252(g)
Does Not Apply Here ...............................................................3

      B.     The Government's Argument Regarding 8 U.S.C. § 1252(f)(2)
Is Untimely And Lacks Merit....................................................5

      C.     The Suspension Clause Supports Jurisdiction Here...........................7

II.     DHS Cannot Deny Mr. Tazu's Right To Pursue Relief Offered
By Its Own Regulations. .....................................................................10

      A.     The Clear Language In The Regulations Preserves Mr. Tazu's
Right To Pursue Relief...........................................................11

      B.     Allowing DHS To Remove Mr. Tazu Before He Completes The
Provisional Waiver Process Would Prejudice Him In Violation
of His Constitutional Rights....................................................14

III.    The District Court Denied Mr. Tazu's Claim Based On The
Erroneous Conclusion That Mr. Tazu's Motion To Reopen Was
Regulatory. ........................................................................................20

      A.     Clear Circuit Law Establishes That Mr. Tazu's Motion To
Reopen Was Statutory............................................................20

      B.     Mr. Tazu Is Not Attempting To Litigate His Motion To Reopen
In This Circuit .....................................................................22

IV.    Mr. Tazu Has A Regulatory And Due Process Right To Notice,
Hearing, And An Orderly Removal. ....................................................23

CONCLUSION .................................................................................................27

# TABLE OF AUTHORITIES

**CASES**

*Alam v. Nielsen*, 312 F. Supp. 3d 574 (S.D. Tex. 2018)..................................24, 25

*Arevalo v. Ashcroft*, 344 F.3d 1 (1st Cir. 2003)......................................................16

*Bosquet v. Holder*, 346 Fed. Appx. 635 (2d Cir. 2009)...........................................6

*Boumediene v. Bush*, 553 U.S. 723 (2008) ..............................................................7

*Calderon v. Sessions*, 330 F. Supp. 3d 944 (S.D.N.Y. 2018).....................6, 24, 26

*Carafas v. LaVallee*, 391 U.S. 234 (1968)...............................................................9

*Chehazeh v. Att'y Gen. of U.S.*, 666 F.3d 118 (3d Cir. 2012) .................................4

*De Jesus Martinez v. Nielsen*, 341 F. Supp. 3d 400 (D.N.J. 2018) ........................15

*Dinnall v. Gonzalez*, 421 F.3d 247 (3d Cir. 2005)..................................................18

*Dong Wang v. Lynch*, 640 Fed. Appx. 66 (2d Cir. 2016) ......................................20

*E.O.H.C. v. Sec'y United States Dep't of Homeland Sec.*, 950 F.3d 177 (3d Cir. 2020) ....................................................................................................8

*Garcia v. Att'y Gen.*, 553 F.3d 724 (3d Cir. 2009)...............................................4, 5

*Goncalves v. Reno*, 144 F.3d 110 (1st Cir. 1998) ..................................................13

*Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1 (1979) ....16, 17

*Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271 (1988)...............7

*Hamama v. Adducci*, 912 F.3d 869 (6th Cir. 2018) ..........................................9, 10

*Hoyte v. Holder*, No. 2:10-CV-01320, 2011 WL 5102421 (W.D. La. Oct. 6, 2011) ................................................................................................................25

*Iavorski v. U.S. I.N.S.*, 232 F.3d 124 (2d Cir. 2000) .............................................20

*I.N.S. v. St. Cyr*, 533 U.S. 289 (2001) ...........................................................*passim*

*Jennings v. Rodriguez*, 138 S. Ct. 840 (2018) .........................................................4

*Jimenez v. Nielsen*, 334 F. Supp. 3d 370 (D. Mass. 2018) ...............................17, 18

*Kentucky Dep't of Corr. v. Thompson,* 490 U.S. 454 (1989) ...........................25, 26

*Leslie v. Att'y Gen. of U.S.*, 611 F.3d 171 (3d Cir. 2010)........................11, 15, 18

*Martinez v. McAleenan*, 385 F. Supp. 3d 349 (S.D.N.Y. 2018).............................27

*Mata v. Lynch*, 135 S. Ct. 2150 (2015)....................................................21

*Morrison v. Madison Dearborn Capital Partners III L.P.*, 463 F.3d 312 (3d Cir. 2006) .................................................................15, 16

*Nken v. Holder*, 556 U.S. 418 (2009) ......................................................7

*Opre v. Lynch*, 648 Fed. Appx. 20 (2d Cir. 2016).................................................20

*Peyton v. Rowe*, 391 U.S. 54 (1968) ......................................................9

*Ragbir v. Homan*, 923 F.3d 53 (2d Cir. 2019)....................................................8, 10

*Ragbir v. Sessions*, 18-CV-236 (KBF), 2018 WL 623557 (S.D.N.Y. Jan. 29, 2018) ...............................................................24, 25

*Rashid v. Mukasey*, 533 F.3d 127 (2d Cir. 2008) ....................................................20

*Reno v. Am.-Arab Anti-Discrim. Committee*, 525 U.S. 471 (1999)......................4, 5

*Sean B. v. McAleenan*, 412 F.Supp.3d 472 (D. N.J. 2019)..................................6, 9

*Skurtu v. Mukasey*, 552 F.3d 651 (8th Cir. 2008) ...........................................23

*Thuraissigiam v. U.S. DHS*, 917 F. 3d. 1097 (9th Cir. 2019)..................................9

*Tri-M Grp., LLC v. Sharp*, 638 F.3d 406 (3d Cir. 2011)..................................5, 6

*United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260 (1954)...............*passim*

*United States v. Charleswell*, 456 F.3d 347 (3d Cir. 2006) ..................................16

*United States v. Mendoza-Lopez*, 481 U.S. 828 (1987) .........................................16

*United States v. Torres*, 383 F.3d 92 (3d Cir. 2004) .......................................*passim*

*Verde-Rodriguez v. Att'y. Gen. of U.S.*, 734 F.3d 198 (3d Cir. 2013)....................23

*Zhao v. I.N.S.*, 452 F.3d 154 (2d Cir. 2006) ............................................20

**STATUTES**

8 U.S.C. § 1252(f)(2) ............................................5, 6, 7

8 U.S.C. § 1252(g) ............................................*passim*

**OTHER AUTHORITIES**

8 C.F.R. § 212.2 ............................................12, 17

8 C.F.R. § 212.7 ............................................12, 17

8 C.F.R. § 241.4 ............................................23, 24, 25

78 Fed. Reg. 536-01 ............................................15

**INTRODUCTION**

Petitioner Syed Tazu asks this Court to protect his right to exhaust the process to pursue relief established by the Government's own regulations. The regulations at issue grant noncitizens the right to pursue legal status while in the United States and to receive notice and review of revocation of immigration protections. Arbitrary detention and deportation, without notice, while a noncitizen pursues those processes, violates not only the Government's obligations under the Administrative Procedure Act but also Mr. Tazu's due process rights. The Government's opposition does nothing to avoid this conclusion. Simply put, after 27 years working to raise his family in this country as what the District Court called a "model supervisee," Mr. Tazu has a legal right to challenge his removal through an orderly process of notice and hearing. (JA6). The Government's view that it can instead abruptly deport him is neither just nor legally supportable.

This Court has jurisdiction to hear habeas claims, which Mr. Tazu raised in his petition to the District Court. The Government contends that the statute must be read broadly—against Supreme Court precedent—to strip all jurisdiction, such that Mr. Tazu could not seek review of the claims raised in his habeas petition. The Government also contends that this Court is stripped from granting a stay of removal because of a separate provision prohibiting courts from granting certain

immigration-related injunctions. These arguments do not overcome the holdings and reasoning in the cases that have long held otherwise.

After correctly deciding it had jurisdiction, the District Court erred in denying Mr. Tazu's three habeas claims on the merits, erroneously concluding that the Government could avoid its obligations to provide processes for immigration relief protected by the Government's own regulations. The District Court relied on language providing that the provisional waiver process regulation did not confer a stay of removal authorized by the Secretary of the Department of Homeland Security ("DHS") and the agency's interpretation of constitutional due process rights created by its regulations to conclude that Mr. Tazu has no due process right to pursue the relief the regulations promised. This reading empties the regulations of their power by allowing DHS to void the regulation through deportation, and of their purpose, to provide a route to keep families together. Such a result runs counter to Supreme Court decisions finding a due process right to pursue relief— even discretionary relief—and obligating agencies to adjudicate requests for that relief consistent with the purpose and total import of those regulations.

The Government fails to rebut the only proper conclusion here: that the District Court erred in denying Mr. Tazu's habeas petition, and that Mr. Tazu should be granted a stay of detention and removal pending the exhaustion of his provisional waiver and motion to reopen process.

**ARGUMENT**

## I.    This Court Has Jurisdiction To Review Mr. Tazu's Statutory And Constitutional Due Process Claims.

There can be no dispute that Mr. Tazu is not challenging the validity of his final order of removal. *See* Gov't Resp. Brief at 24 ("Because the removal order itself is not under review…"); *see also* Pet'r's Brief at 26 ("Mr. Tazu does not challenge the validity of his removal order…").  What is in dispute is whether the District Court correctly found that it had jurisdiction to hear Mr. Tazu's statutory and constitutional due process claims regarding the process employed to detain and deport Mr. Tazu while he availed himself of a lawful process made available by the Government to ensure that families remained together in the United States.  Also at issue is whether this Court may issue a stay of that removal pending Mr. Tazu's completion of the provisional waiver process.

### A.    The Jurisdiction-Stripping Language Of 8 U.S.C. § 1252(g) Does Not Apply Here

As Mr. Tazu previously noted in the Opening Brief, the District Court correctly found that it had jurisdiction over Mr. Tazu's claims because 8 U.S.C. § 1252(g) strips Article III courts of jurisdiction only over certain immigration-related challenges and does not categorically divest those courts of all claims related to removal orders.  *See* Pet'r's Brief at 27-29.  Indeed, the District Court

3

explained, this Circuit has "clarified" that the Supreme Court rejected the argument that 1252(g) is a "zipper clause" that covers the entire "universe" of deportation claims. (JA43); *see also Garcia v. Att'y Gen.*, 553 F.3d 724 (3d Cir. 2009) ("[The Supreme Court] held that section 1252(g) applies only to three discrete actions that the Attorney General may take: her decision or action to *commence* proceedings, *adjudicate cases*, or *execute* removal orders") (internal quotations omitted) (quoting *Reno v. Am.-Arab Anti-Discrim. Committee* (*AADC*), 525 U.S. 471, 482–483 (1999)); *Chehazeh v. Att'y Gen. of U.S.*, 666 F.3d 118, 134 (3d Cir. 2012) ("[I]t is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings.") (quoting *AADC*, 525 U.S. at 482).

Just two years ago, the Supreme Court itself instructed courts to "read the language [of 1252(g)] to refer to just those three specific actions themselves" listed in the section. (JA43) (citing *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) (reinforcing *AADC*'s holding that 1252(g) was limited to three distinct actions and that the language of the provision did not "sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General")). Here, as the District Court explained, Mr. Tazu does not raise any of the three enumerated claims, and "does not challenge the Attorney General's discretionary authority" to execute Mr. Tazu's removal order. (JA43). Rather, Mr. Tazu asks "whether the

way the respondents acted accords with the Constitution and the laws of this country" – a question not included in 1252(g)'s narrow exclusion list. (JA44).

The Government relies upon *AADC* to argue that "Section 1252(g) precludes federal courts from reviewing the discretionary decision to execute a removal order." Gov't Resp. Brief at 3 (citing *AADC*, 525 U.S. 471, 483 (1999)). Yet, the Government concedes that Mr. Tazu brings no challenge to his removal order itself. Moreover, the Third Circuit has already explained that *AADC* "rejected" the Government's "unexamined" argument. *Garcia*, 553 F.3d at 729 (internal citations omitted).

**B.    The Government's Argument Regarding 8 U.S.C. § 1252(f)(2) Is Untimely And Lacks Merit**

The Government introduces an admittedly untimely argument regarding 8 U.S.C. § 1252(f)(2) that it cannot cure or defend. *See* Gov't Resp. Brief at 24-25, n. 2.

As a threshold matter, the Government is procedurally barred from raising this 8 U.S.C. § 1252(f)(2) argument on appeal because the Government did not demonstrate exceptional circumstances as required by *Tri-M v. Sharp*. Unlike the defendant in *Tri-M*, the Government has failed to demonstrate that its arguments sufficiently implicate the public interest. *See Tri-M Grp.*, *LLC v. Sharp*, 638 F.3d 406, 415–16 (3d Cir. 2011) ("The 'public interest' weighs heavily toward our

consideration of the market participant issue.").  Contrary to the Government's contention, this Court's grant of a temporary stay of removal pending appeal is not an "exceptional circumstance" required under *Tri-M*, nor should that stay be interpreted as an injunction that constitutes an "exceptional circumstance."

In any event, the Government has not shown that the section applies to this case.  The Government argues that 1252(f) prohibits courts from granting injunctions in habeas claims and seeks protection under that section by arguing that Mr. Tazu's requested relief is in fact an injunction, not a stay.  The Government is wrong; court orders preventing removal pending the completion of certain proceedings are stays, not injunctions.  *See*, *e.g., Bosquet v. Holder*, 346 Fed. Appx. 635 (2d Cir. 2009) ("As we have completed our review, we hereby ORDER a stay of removal pending the issuance of a new decision by the BIA."); *Sean B. v. McAleenan*, 412 F.Supp.3d 472, 491 (D. N.J. 2019) appeal withdrawn *sub nom*. *Sean Blake v. Sec. United States Department of Homeland Security, et al.*, No. 19-3548, 2019 WL 8645626 (3d Cir. Dec. 13, 2019) ("The Constitution requires, at a minimum, that this court retain the residual habeas jurisdiction to grant a stay so that the review process may unfold in an orderly and efficacious manner."); *Calderon v. Sessions*, 330 F.Supp.3d 944, 959 (S.D.N.Y. 2019) appeal withdrawn *sub nom*. *Villavicencio Calderon v. Sessions*, No. 18-2926, 2018 WL 6920377 (2d Cir. Nov. 27, 2019) ("Accordingly, the Court orders Respondents to stay removal

of Petitioner from the United States until Petitioner exhausts his right to seek a Provisional Unlawful Presence Waiver.").

These orders are stays because, like the stays in the cases cited *supra* and in *Nken v. Holder*, they are not a "coercive order" against the Government, do not directly attack the removal order, are merely a "temporary setting aside of the source of the Government's authority to remove," and only bar removal "by returning to the status quo—the state of affairs before the removal order was entered." 556 U.S. 418, 429–430 (2009) (citing *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 279 (1988)).

## C. The Suspension Clause Supports Jurisdiction Here

As explained above, no reasonable reading of 8 U.S.C. § 1252 strips the courts of jurisdiction to hear this case or grant habeas relief. However, if 1252(g) is read to strip district courts of jurisdiction, and if 1252(f) strips the district courts of the power to grant relief, the resulting complete deprivation of the opportunity to seek habeas relief would violate the Suspension Clause. *See Boumediene v. Bush*, 553 U.S. 723, 771 (2008) (holding that if the "privilege of habeas corpus is to be denied," Congress must "provide adequate substitute procedures for habeas corpus" to avoid the Suspension Clause mandate). *See also, I.N.S. v. St. Cyr*, 533 U.S. 289, 305 (2001) (holding that a "serious Suspension Clause issue would be presented" if a statute withdrew the writ of habeas corpus "and provided no

adequate substitute for its exercise"); *Ragbir v. Homan*, 923 F.3d 53, 73 (2d. Cir. 2019) (a petitioner is entitled to the writ of habeas corpus, unless Congress provides an "adequate substitute" or there is a formal suspension of the writ).

Mr. Tazu has not and cannot avail himself of a constitutionally sufficient alternative to habeas review—no other federal or administrative procedure exists to hear these claims. Mr. Tazu, already subject to a final order of removal, cannot seek a petition for review of the order of removal on the basis of the claims raised here. The motion to reopen was not, as the Government argues, an "adequate alternative" because it does not and cannot address the statutory and constitutional due process issues raised in this habeas proceeding. Gov't Resp. Brief at 22–24. In fact, *United States v. Torres*, on which the Government relies elsewhere in its brief, explained that the Supreme Court read Section 1252 narrowly because "the resulting bar might amount to an unconstitutional suspension of habeas corpus." 383 F.3d 92, 102 (3d Cir. 2004) (citing *St. Cyr*, 533 U.S. at 314); *see also E.O.H.C. v. Sec'y United States Dep't of Homeland Sec.*, 950 F.3d 177 (3d Cir. 2020) (following *Jennings* and declining to read an analogous section of § 1252 as barring all judicial review of related claims).

To avoid the application of the Suspension Clause, the Government attempts to recategorize Mr. Tazu's claims as something other than a habeas claim, arguing that habeas courts can only release individuals from custody and not stay orders of

removal. Gov't Resp. Brief at 24. This contradicts long-standing decisions granting other forms of relief, including in the context of deportation. *See Peyton v. Rowe*, 391 U.S. 54, 67 (1968) ("Thus, to the extent that McNally relied on the notion that immediate physical release was the only remedy under the federal writ of habeas corpus, it finds no support in the statute and has been rejected by this Court in subsequent decisions."); *Carafas v. LaVallee*, 391 U.S. 234, 238-239 (1968) ("But the statute does not limit the relief that may be granted to discharge of the applicant from physical custody."); *see also Thuraissigiam v. U.S. DHS*, 917 F. 3d. 1097, 1117 (9th Cir. 2019) ("Finality era precedent establishes that the [Supreme] Court regularly reviewed on habeas 'claims for statutory as well as constitutional error in deportation proceedings' and 'claims that deportation hearings were conducted unfairly.'").

The Government's reliance upon *Hamama v. Adducci* likewise fails to prevent application of the Suspension Clause here. 912 F.3d 869, 876 (6th Cir. 2018). Respectfully, Petitioners submit that this court should not follow this case as it is not binding on this court and its reasoning is not persuasive. The *Hamama* divided panel overlooked the historical analysis *St. Cyr* developed and came to the conclusory and incorrect decision that relief from deportation is not traditionally cognizable in habeas. *See St. Cyr*, 533 U.S. at 300-306; *see also Sean B*, 417 F.Supp.3d at 485-486; *Compere v. Nielsen*, 358 F. Supp. 3d 170, 181 n. 10 (D.N.H.

Jan. 24, 2019) (noting that the court was "unpersuaded" by *Hamama* and providing analysis to support the contrary conclusion).  Further, as the *Ragbir* court explained, the petitioner in *Hamama* had not exhausted initial administrative forms of relief to contest his removal order; here, in contrast, Mr. Tazu seeks to protect the right to pursue certain processes *even when* his final removal order remains valid—an issue for which the motion to reopen and petition for review process is no substitute.  *See Ragbir*, 923 F.3d at 74 n.27.

## II.    DHS Cannot Deny Mr. Tazu's Right To Pursue Relief Offered By Its Own Regulations.

DHS has promised noncitizens an opportunity to seek immigration relief and become a legal permanent resident, in order to remain permanently in the United States with their families.  Noncitizens pursue this relief through a three-application process outlined in DHS regulations:  the Form I-130, Form I-212, and Form I-601A.  *See* Pet'r's Brief at 8–9; Gov't Resp. Brief at 31–34.  Form I-130 is the "Petition for an Alien Relative," the first step that confirms that the applicant does have a citizen family member in the United States; Form I-212 allows an individual to reapply for admission to the United States; and Form I-601A allows an individual to request a provisional waiver of inadmissibility into the United States based on unlawful presence grounds.  Importantly, the regulations prohibit

applicants from pursuing the Form I-601A from outside the United States. Together, these form the "provisional waiver process."

Mr. Tazu's right to pursue the provisional waiver process is protected by the *Accardi* doctrine, which the Third Circuit has recognized as a "long-settled principle that rules promulgated by a federal agency that regulate the rights and interests of others are controlling upon the agency." *Leslie v. Att'y Gen. of U.S.*, 611 F.3d 171, 175 (3d Cir. 2010) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266–67 (1954)). Since Mr. Tazu has availed himself of a process that regulates his rights and interests, *Accardi* prevents the Government from acting contrary to its own rules and requires it to provide and adjudicate the provisional waiver process promised in its regulations.

**A.     The Clear Language In The Regulations Preserves Mr. Tazu's Right To Pursue Relief**

There is no dispute that DHS, through the provisional waiver process, has promulgated rules that vest the U.S. Citizenship and Immigration Services ("USCIS") with the power to administer discretionary relief that regulates the rights and interests of others. *See* Gov't Resp. Brief at 32–33; Pet'r's Brief at 8. The District Court erred in holding that the discretionary nature of the provisional waiver process permits the Government to refuse to exercise that power. The fact that the Government has the discretion to grant or deny Mr. Tazu's applications

does not change the fact that the regulations require the Government to accept and adjudicate them.  In fact, contrary to the District Court's holding, the explicit language of the regulations obligates the Government to offer and adjudicate the process, and does not afford discretion to revoke the right to pursue the process or to decide not to adjudicate it by deporting noncitizens.

As Mr. Tazu explained in the Opening Brief, the regulations provide that "USCIS *will* adjudicate a provisional unlawful presence waiver application in accordance with this paragraph and section 212(a)(9)(B)(v) of the Act."  Pet'r's Brief at 16 (quoting 8 C.F.R. § 212.2(e)(8)) (emphasis added).  Two other sections further require that applicants must be notified of the Government's decisions.  8 C.F.R. § 212.2(h) ("applicant who has submitted a request for consent to reapply for admission after deportation or removal *must* be notified of the decision.) (emphasis added); 8 C.F.R. § 212.7(e)(9)(i) ("USCIS *will* notify the alien and the alien's attorney of record or accredited representative of the decision in accordance with 8 CFR 103.2(b)(19).").  The regulatory language is clear:  while there is no requirement that the Government arrive at a certain decision, the Government *must* arrive at *a* decision.  The Government entirely fails to address—much less rebut— this regulatory language.  *See* Gov't Resp. Brief at 39 (quoting *Torres*, 383 F.3d at 105).

The District Court erroneously focused on the discretionary nature of the ultimate relief, rather than the regulations that mandated some exercise of that discretion, which *Accardi* requires. *Accardi*, 347 U.S. at 266 (emphases added) ("the clear *import* of broad provisions for a final review by the Attorney General himself would be *meaningless* if the Board were not expected to render a decision in accord with its own collective belief."). Precluding even the pursuit of the provisional waiver process violates Supreme Court precedent in *Accardi*, which located the obligation to exercise discretion in the word "discretion," not the word "shall," which was not separately discussed. *See Accardi*, 347 U.S. at 266–67 (holding that "if the word 'discretion' means anything in a statutory or administrative grant of power, it means that the recipient must exercise his authority according to his own understanding and conscience."); *see also Goncalves v. Reno*, 144 F.3d 110, 125 (1st Cir. 1998) ("it is no answer…to emphasize the broad discretion of the political branches in immigration matters. It was the intent of Congress that such discretion be exercised."). The "decisive fact" in *Accardi* was therefore not the mandatory language, as the Government contends, *see* Gov't Resp. Brief at 39, but rather the exercise of discretion.

Under both the *Accardi* Doctrine and the clear language of the regulation, the Government does not have discretion whether to adjudicate Mr. Tazu's I-212 application. Section 212 requires the Government to provide Mr. Tazu with a

decision and allowing the Government to effect removal without adjudicating his application falls foul of the *Accardi* Doctrine.

**B.  Allowing DHS To Remove Mr. Tazu Before He Completes The Provisional Waiver Process Would Prejudice Him In Violation of His Constitutional Rights**

*Accardi* requires the Government to offer and adjudicate the provisional waiver process even where the regulations state that "pending or approved provisional unlawful presence waiver does not constitute a grant of a lawful immigration status or a period of stay authorized by the Secretary." Permitting deportation while a noncitizen pursues the provisional waiver process would permit the Government to arbitrarily deny that promised process to some noncitizens and permanently deprive them of even the possibility of relief. The District Court's holding to the contrary, (JA16-17), amounts to holding that the Government may avoid at will, arbitrarily and without cause, its obligations to consider provisional waiver applications submitted to it. Such a conclusion is supported neither by the mandatory language present in the regulations, nor the "clear import" and logic of regulations requiring the Government to exercise its discretion and consider applications for relief as described in *Accardi*. *Accardi*, 347 U.S. at 266.

As a result of the Government's arbitrary violation of its own regulations, the District Court erred in finding no violation of the Administrative Procedure Act ("the APA"), *see De Jesus Martinez v. Nielsen*, 341 F. Supp. 3d 400, 410 (D.N.J. 2018) *appeal dismissed sub nom. Martinez v. Sec'y, U.S. Dep't of Homeland Sec.*, No. 18-3478, 2019 WL 2064450 (3d Cir. Feb. 15, 2019) (finding that, where DHS attempted to deport the petitioner while pursuing the provisional waiver process, DHS's "failure to follow those rules without explanation is arbitrary, capricious, and an abuse of discretion" violating the APA) (citing *Leslie* 611 F.3d at 175).

The District Court further erred because the Government's interpretation of the regulation is not entitled to *Chevron* deference, as it is "inconsistent with the regulation." *Morrison v. Madison Dearborn Capital Partners III L.P.*, 463 F.3d 312, 315 (3d Cir. 2006). Because Mr. Tazu must apply for a Form I-601A that can only be completed within the United States, removal would entirely preclude him from pursuing the process the Government promised in its regulations. Thus, DHS's view that there is no "cognizable due process interest" in pursuing this relief is inconsistent with the language in the regulations requiring a decision-maker to offer and adjudicate the requests for relief. 78 Fed. Reg. 536-01, 554 (Jan. 3, 2013).

Further, DHS's interpretation is "plainly erroneous" in light of Supreme Court precedent finding that a due process right *does* attach to discretionary relief,

and in light of the fact that deportation would violate Mr. Tazu's due process rights by permanently depriving him of even the possibility of the relief offered in the regulations. *Morrison*, 463 F.3d at 315. Both the Supreme Court and this Court have recognized that due process protections attach to discretionary relief. *See, e.g.*, *Torres*, 383 F.3d at 105 (explaining that individuals seeking discretionary relief "may be entitled to certain due process protections"); *United States v. Charleswell*, 456 F.3d 347, 359-60 (3d Cir. 2006); *see also Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 12-13 (1979); *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38 (1987); *I.N.S. v. St. Cyr*, 533 U.S. 289, 325 (2001). *Accardi* is particularly instructive:

> Of course, [a petitioner] may be unable to prove his allegation before the District Court; but he is entitled to the opportunity to try. If successful, he may still fail to convince the Board or the Attorney General, in the exercise of their discretion, that he is entitled to suspension, but at least he will have been afforded that due process required by the regulations in such proceedings.

347 U.S. at 268; *see also Arevalo v. Ashcroft*, 344 F.3d 1 (1st Cir. 2003).

This Circuit's decision in *Torres*, which applied a standard to deciding when a due process right to discretionary relief attaches, reinforces the fact that a due process right attaches to Mr. Tazu's right to pursue the provisional waiver process.[1]

---

[1] The Supreme Court has indicated that due process rights vest even where the statute offering discretionary relief contains no mandatory language or substantive guidelines. *See, e.g.*, *Mendoza-Lopez*, 481 U.S. at 837-38

As discussed *supra*, the regulations contain mandatory language requiring an exercise of discretion.  Further, both 8 C.F.R. §§ 212.2 and 212.7 list "substantive predicates to guide official decision making."  *Torres*, 383 F.3d at 105.

The District Court's reading of the regulations contradicts and frustrates their intended purpose, and upends the "clear import" of regulation obligating DHS to exercise discretion consistent with that purpose.  As the *Jimenez v. Nielsen* court explained, DHS introduced the 2016 expanded regulation because the 2013 iteration

> caused a separation of United States citizen spouses, and often United States citizen children, from their husbands, their wives, and parents for a year or more; this created financial, emotional, and humanitarian hardships that the waiver process is intended to avoid; and that separating families that included at least one United States citizen was incompatible with promoting family unification, an important objective of the United States immigration laws.

334 F. Supp. 3d 370, 377 (D. Mass. 2018).

Because DHS "promulgate[d] a regulation protecting fundamental statutory or constitutional rights of parties appearing before it," in this case, family unity, "the agency must comply with that regulation" and may not, through removal,

---

(holding that a statute precluding the right to seek certain discretionary relief violated due process, over the dissent's explicit argument that the fact that the statute granted wide discretion meant that due process rights were not implicated); *Greenholtz*, 442 U.S. at 12-13 (explaining that "[i]t is axiomatic that due process 'is flexible and calls for such procedural protections as the situation demands'").

arbitrarily deprive noncitizens of the right to pursue the provisional waiver process designed to keep families together. *Leslie*, 611 F.3d at 177. Neither the stay language in the regulation nor DHS's comments that no constitutional due process right attaches alters these constitutional obligations.

Even if detention and attempted removal did not violate fundamental rights, the opportunity to pursue the provisional waiver process would still be an "agency-created" benefit, the arbitrary denial of which has—and would—cause Mr. Tazu serious prejudice. DHS may not preclude noncitizens from pursuing the process its regulations requires it to offer and decide. *See Leslie*, 611 F.3d at 171; *Dinnall v. Gonzales*, 421 F.3d 247, 260 (3d Cir. 2005) (holding that depriving an immigrant of access to discretionary relief can amount to prejudice).

The Government argues that cases Mr. Tazu cited do not apply here because the courts did not address the regulatory language or DHS's interpretations. While it is unclear whether certain cases reviewed the regulation, Mr. Tazu explained in the Opening Brief that the *Jimenez v. Nielsen* court did. *See* Pet'r's Brief at 14–15; *see also Jimenez*, 334 F. Supp. 3d at 389 (balancing the removal language and DHS's intent with the need to preserve meaning in the provisional waiver regulations). That court found "no reason to conclude that, having promulgated the provisional waiver regulations in 2013, and amended them in 2016 to make aliens with final orders of removal eligible for such waivers, the Secretary of DHS

intended to allow Immigration and Customs Enforcement ("ICE") to ignore the regulations and their important purposes." *Id*.

Contrary to the Government's assertion, the fact that Mr. Tazu has yet to receive an approved Form I-212 and is therefore purportedly "ineligible" to submit a Form I-601A does not change the due process analysis in this case. Deporting Mr. Tazu after he received an approved Form I-130, while he has a pending Form I-212 application, would preclude Mr. Tazu from ever filing Form I-601A in the first place. Thus, the question here is not whether Mr. Tazu may be deported after he has filed a form I-601A; the question is whether, having approved Mr. Tazu's right to pursue the provisional waiver process and promised to offer and adjudicate applications he submits in accordance with that process, the Government may arbitrarily deprive him of the ability to be considered for that relief.

Concluding otherwise would allow DHS to pick and choose who is granted the opportunity to pursue relief promised in its regulations and who is not. The fundamental purpose of the regulations, to keep families together, would be subject not to predictable and consistent application of the regulations, but to whim. This concern is particularly salient in Mr. Tazu's case where the Government has never explained why Mr. Tazu, a "model supervisee," (JA6), was detained for removal after receiving an approved I-130, after 10 years of living in the United States, while he was attending his regular Order of Supervision ("OSUP") meetings

confirming his compliance with requirements permitting him to stay, and after he had been recommended for a stay of removal by a government official.

## III. The District Court Denied Mr. Tazu's Claim Based On The Erroneous Conclusion That Mr. Tazu's Motion To Reopen Was Regulatory

### A. Clear Circuit Law Establishes That Mr. Tazu's Motion To Reopen Was Statutory

When the District Court held that Mr. Tazu's motion to reopen was not statutory, it did so because it could not find "any case law, statute or regulation" that would permit a motion to reopen based on ineffective assistance of counsel to be considered statutory when number and time-barred. (JA12). In so holding, the District Court overlooked a number of cases that held that otherwise-barred statutory motions to reopen can be equitably tolled for ineffective assistance of counsel; Mr. Tazu's Opening Brief highlights these cases. *See* Pet'r's Brief at 24–25.

In the Second Circuit, where Mr. Tazu's motion to reopen is being reviewed, he has a right to submit a statutory motion to reopen past the number and time-bars on the grounds that ineffective assistance of counsel tolls those limitations. *See e.g.*, *Rashid v. Mukasey*, 533 F.3d 127, 130 (2d Cir. 2008); *see also Dong Wang v. Lynch*, 640 Fed. Appx. 66, 67 (2d Cir. 2016); *Opre v. Lynch*, 648 Fed. Appx. 20, 22 (2d Cir. 2016); *Zhao v. I.N.S.*, 452 F.3d 154, 156 (2d Cir. 2006); *Iavorski v.*

*U.S. I.N.S.*, 232 F.3d 124, 132 (2d Cir. 2000). As a result, the District Court erred in ruling Mr. Tazu's motion to reopen is a "purely discretionary matter" that the BIA may refuse to decide. (JA11); *see also Mata v. Lynch*, 135 S. Ct. 2150, 2155 (2015) (noting the difference between a statutory motion to reopen based on equitable tolling and a regulatory motion to reopen relying on the BIA's *sua sponte* authority).

The Government argues, however, that the District Court's ruling should be upheld because the District Court could not actually make a finding that the motion to reopen is statutory. *See* Gov't Resp. Brief at 50 ("neither this Court nor the district court could determine that the pending motion to reopen is a statutory one without determining whether equitable tolling even applies."). But whether Mr. Tazu's motion is statutory is governed by Second Circuit case law, not a factual finding. To be clear, the Second Circuit is the appropriate forum for factual findings and a determination of the *merits* of the motion to reopen. It is for this Court to decide whether Mr. Tazu's detention and removal violates his *right to pursue* the motion to reopen. It is not the role of the District Court to decide whether equitable tolling applies, only whether Mr. Tazu has a right to pursue the claim that it does.

**B. Mr. Tazu Is Not Attempting To Litigate His Motion To Reopen In This Circuit**

The Government argues that the District Court, and the present Court, should not even be reviewing Mr. Tazu's right to pursue his motion to reopen. Gov't Resp. Brief at 50–51 (claiming that Mr. Tazu's two proceedings are "inextricably intertwined" and a "blatant attempt to seek review of his removal order in two separate forums."). This confuses the issue. The key habeas question is whether he has a right to *pursue relief*; the key question in Mr. Tazu's motion to reopen, on the other hand, is whether he has a right to the *relief itself*.

As Mr. Tazu stated, and as the District Court found, Mr. Tazu "does not challenge the validity of his removal order, but rather raises an independent challenge under the APA and the due process clause, challenging detention and removal while pursuing various legal processes held out by DHS." Pet'r's Brief at p. 26; (*see also* JA38–39, 41.). The Government even acknowledges this in a different section of its argument. *See* Gov't Resp. Brief at 24 ("the removal order itself is not under review."). If this Circuit finds that Mr. Tazu has a right to pursue his motion to reopen, it impacts the question whether he can be removed while that motion is pending, but would not actually reopen the immigration proceedings or affect his final order of removal. (*See* JA8–9.)

For this reason, the Government's reliance upon *Verde-Rodriguez* and *Skurtu* is inapposite: these cases involved petitioners who directly contested their order of removal. *See Verde-Rodriguez v. Att'y. Gen. of U.S.*, 734 F.3d 198, 200 (3d Cir. 2013) (petition for reinstatement as a permanent resident or cancellation of removal); *Skurtu v. Mukasey*, 552 F.3d 651, 654-55 (8th Cir. 2008) (appealing the BIA's affirmance of a decision denying asylum).

## IV.  Mr. Tazu Has A Regulatory And Due Process Right To Notice, Hearing, And An Orderly Removal

The regulations governing the process for removal in Mr. Tazu's situation are laid out in 8 C.F.R. § 241.4(l), pursuant to which Mr. Tazu must be afforded notice and an opportunity to respond.  Section 241.4(l), entitled "Revocation of release," governs the procedures for revocation of the OSUP of an individual not already in ICE detention, including to "commence removal proceedings against" an individual.  8 C.F.R. §241.4(l)(2) ("The Executive Associate Commissioner shall have authority, in the exercise of discretion, *to revoke release and return to [ICE] custody* an alien previously approved for release under the procedures in this section.") (emphasis added).  Section 241.4(l)(1)  requires, upon revocation, that the individual be "notified of the reasons for revocation of his or her release or parole," followed by "an initial informal interview promptly after his or her return

to [ICE] custody" to allow for "an opportunity to respond to the reasons for revocation stated in the notification."  8 C.F.R. § 241.4(l)(1).

The most fundamental due process protections of the Fifth Amendment, freedom from physical restraint or detention, provide procedural protection in addition to the regulations.  *See Ragbir v. Sessions*, 18-CV-236 (KBF), 2018 WL 623557, at *2 (S.D.N.Y. Jan. 29, 2018)  (basing its due process interest in the fundamental freedom from "custody, detention, or other forms of physical restraint… at the heart of the liberty [the Fifth Amendment's Due Process Clause] protects").  These fundamental due process protections are distinct from liberty or property interests created by any statute or regulatory scheme and apply even without explicit promises made by the Government to any individual in an OSUP. *Id*.  The Government must provide adequate, timely notice commensurate with the action it plans to take.  *See Calderon*, 330 F.Supp.3d at 949.

The District Court erred in concluding that Mr. Tazu had no due process right to notice and opportunity for review of the revocation of his OSUP, relying on regulations inapplicable to this case.  The District Court cited the wrong regulation when relying upon *Alam v. Nielsen* to assert that "the possibility of prompt removal" suspends the revocation hearing that the regulation otherwise requires.  *See* 312 F.Supp.3d 574, 582 (S.D. Tex. 2018) (citing § 241.4(k)(3)). Though the *Alam* court states, "custody reviews, release procedures, and other

24

processes" are "laid out in considerable detail" in the regulations, *Alam* analyzed a process in 8 C.F.R. Section 241.4(k) which does not apply to Mr. Tazu.  *See id.* at 582.  As discussed above, Section 241.4(l) lays out the correct procedures for Mr. Tazu, and is an entirely separate procedure.  Section 241.4(l)(3) even cross-references with section 241.4(k), requiring that, after the procedures of section 241.4(l)(1) have been carried out, "custody reviews will be conducted annually under the provisions of paragraphs (i), (j), and (k) of this section."  Construed correctly, the regulations make clear that Mr. Tazu is not subject to section 241.4(k) custody review until after the review process of section 241.4(l)(1) has been exhausted.  It has not been.

The Government fails to address this argument and cites another case that applied still a different statute.  *See* Gov't Resp. Brief, at 45-46; *Hoyte v. Holder*, No. 2:10-CV-01320, 2011 WL 5102421, at *2 (W.D. La. Oct. 6, 2011) (discussing 8 C.F.R. § 241.13(i)).  Further, contrary to the Government's argument, prior courts have held that fundamental due process rights vest in these regulations, and do not arise solely from language in the OSUP document itself.  *Compare* Gov't Resp. Brief, at 46 *with* Pet'r's Brief at 18-20, and *compare Kentucky Dep't of Corr. v. Thompson,* 490 U.S. 454, 460 (1989), 460 (analyzing whether petitioner had a liberty interest in a state-created benefit) *with Ragbir*, 2018 WL 623557, at *2 (basing its due process interest in the fundamental freedom from "custody,

detention, or other forms of physical restraint…at the heart of the liberty [the Fifth Amendment's Due Process Clause] protects"). *Thompson*, which the Government cites, analyzes a state-created liberty interest, not the fundamental protections of the Fifth Amendment by itself. *See Thompson*, 490 U.S. at 454.

The Government's assertion that "[Mr. Tazu] received adequate notice of his removal — the day his deportation order became final…" and "again when he was re-detained in 2009" fails to account for the passage of time. *See* Gov't Resp. Brief at 46. The Due Process clause does not make notice provided in 2003 (when he received his final order of removal) or 2009 (when he was detained and then released to live and work in the United States under an OSUP) sufficient to support removal at Mr. Tazu's OSUP meeting in 2019. The District Court noted the delay in the Government's action on Mr. Tazu's removal when it said:

> [L]iterally, the man is released on June 8, 2009, and you didn't obtain a travel document until February 11, 2019.…[S]houldn't there be some type of temporal limit in terms of what the Government can – how expeditiously the Government should move on these matters? I mean, we're talking about 10 years here. Did it take 10 years to obtain the requisite travel document in order to effectuate his removal?

(JA80).

Moreover, it is well-established that notice may become stale with the passage of time. *See Calderon*, 330 F. Supp. 3d at 949 (holding the government violated the APA and the Petitioner's due process rights by executing the petitioner's removal order, outstanding for about eight years, with no explanation

or justification); *see also Martinez v. McAleenan*, 385 F. Supp. 3d 349, 360

(S.D.N.Y. 2018), appeal withdrawn *sub nom. Martinez v. Barr*, No. 19-2533, 2019

WL 7944831 (2d Cir. Nov. 27, 2019) (finding a due process violation when a man

living in the country for decades was deprived of both written notice and an

opportunity to be heard before being detained to execute a removal order).

## CONCLUSION

The Government has failed to rebut Mr. Tazu's arguments that this Court

should overturn the District Court's denial of his petition for a writ of habeas

corpus, issue a stay of removal from the United States until Mr. Tazu exhausts his

right to seek a Provisional Unlawful Presence Waiver and completes his motion to

reopen, and declare that if unsuccessful in his applications, Mr. Tazu is entitled to

an orderly departure.

Dated this 1st day of June, 2020.

Respectfully submitted,

/s/ *Jeremy Feigelson*

Jeremy Feigelson
Aasiya F.M. Glover
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
Phone: (212) 909-6000


Gregory P. Copeland, Legal Director
Sarah T. Gillman, Legal Director
NSC Community Legal Defense
11 Broadway, Suite 615
New York, NY 10004
Phone: (212) 843-0910
Fax: (212) 257-7033

*Counsel for Petitioner - Appellant*

# L.A.R. 31.1 CERTIFICATION

CASE NAME: *Tazu v. Barr, et. al.*

DOCKET NUMBER: 19-1715

     I, Jeremy Feigelson, pursuant to L.A.R. 31.1 (c), certify that our firm's technology systems have scanned for viruses the PDF version of the Reply Brief For Petitioner - Appellant that is being submitted in this case and no viruses were found.

     The virus detection program used was Symantec Endpoint Protection, Version 14.2.

Dated: June 1, 2020
                                */s/ Jeremy Feigelson*
                                Jeremy Feigelson
                                Counsel for:  *Petitioner Syed Tazu*

## CERTIFICATION OF BRIEF IN PAPER FORMAT

In accordance with the Court's notice dated March 17, 2020 regarding the COVID-19 public health concern, paper copies of this brief were not sent to the Clerk's office. Should the Court require them, counsel for Petitioner will ensure timely service.

Dated: June 1, 2020

*/s/ Jeremy Feigelson*
Jeremy Feigelson
Counsel for: *Petitioner Syed Tazu*

## CERTIFICATION OF COMPLIANCE AND SERVICE

I hereby certify that the body of this reply, including footnotes, contains 6,348 words, thereby satisfying the 6,500-word limit in Fed. R. App. P. 32(a)(7)(B).

I further certify this response complies with the type-style requirements of Fed. R. App. P. 32(a)(5) by using Microsoft Word's Times New Roman 14-point font.

I further certify I am admitted to and have filing privileges with the United States Court of Appeals for the Third Circuit.

I further certify that on June 1, 2020, I caused a copy of this reply brief to be served, by the Notice of Docketing Activity generated by the Third Circuit's electronic filing system, on counsel of record.

Dated: June 1, 2020

*/s/ Jeremy Feigelson*
Jeremy Feigelson
Counsel for: *Petitioner Syed Tazu*