UNITED STATES COURT OF APPEALS
THIRD CIRCUIT


SYED TAZU,

      Appellant

   v.                        No. 19-1715

ATTORNEY GENERAL
UNITED STATES OF AMERICA; et al.



THURSDAY, JULY 9, 2020


        TRANSCRIPT OF ORAL ARGUMENT HELD
REMOTELY BEFORE THE HONORABLE THEODORE A. McKEE,
THE HONORABLE STEPHANOS BIBAS, AND THE HONORABLE
JULIO M. FUENTES, UNITED STATES CIRCUIT COURT
JUDGES.



advanced
depositions
Nationwide Court Reporting & Trial Support
855-204-8184 • www.advanceddepositions.com

1  APPEARANCES:

2  For the Appellant:
   Aasiya F.M. Glover, Esquire

3  (Appearing Remotely)
        Debevoise & Plimpton

4        919 Third Avenue
        New York, New York 10022

5

6  For the Appellee:
   Dhruman Y. Sampat, Esquire

7  (Appearing Remotely)
        United States Department of Justice

8        Office of Immigration Litigation
        P.O. Box 868

9        Ben Franklin Station
        Washington, DC 20044

10

11

12 Proceedings recorded by electronic sound
   recording, transcript produced by transcription

13 service.

14

15

16

17

18

19

20

21

22

23

24

advanced
depositions
Nationwide Court Reporting & Trial Support
855-204-8184 • www.advanceddepositions.com

1          JUDGE MCKEE:  Okay, Counsel, are you
2  ready, Ms. Glover?
3          MS. GLOVER:  Yes, Your Honor.
4          JUDGE MCKEE:  Okay.
5          MS. GLOVER:  So this is Aasiya Glover
6  of Debevoise & Plimpton for Petitioner Syed Tazu.
7  Under normal circumstances, he would be at the
8  counsel table with me, but under the present
9  circumstances, he is at the virtual counsel table
10  watching the live stream.
11          Just to start off with, I'd like to
12  reserve two minutes for rebuttal.
13          JUDGE MCKEE:  All right.
14          MS. GLOVER:  The legal issues in this
15  case are three.  First, whether the Respondents
16  can through deportation deprive Mr. Tazu of access
17  to relief promised by Respondents' own
18  regulations.
19          Second, whether the Respondents can
20  deprive Mr. Tazu of due process and violate their
21  own regulations by revoking his order of
22  supervision without notice or opportunity to be
23  heard.
24          And third, whether this Court has

1    jurisdiction to hear these claims.

2              The arbitrary, and, frankly,

3    upsetting circumstances of Mr. Tazu's immigration

4    arrest and detention go to the heart of

5    Respondents' obligations in this matter because

6    they demonstrate the arbitrary and capricious

7    manner in which the Respondents attempted to

8    deprive Mr. Tazu of his liberty interests in

9    pursuing relief, and actually deprived --

10              JUDGE MCKEE:  Let me ask this, Ms.

11   Glover.  There was a time, I think it was 2009,

12   I'm not really sure, when he received a voluntary

13   departure, voluntary removal; is that right?  And

14   then he was given 30 days to effectuate that and

15   that didn't happen.  Then the voluntary order then

16   converted to an order of removal; is that right so

17   far?

18              MS. GLOVER:  So I believe that the

19   voluntary order of removal was in -- I believe

20   2003, so it was on -- in 2 -- right.

21              JUDGE MCKEE:  Okay.  That's the

22   30-day period that was effectuated and converted

23   to an order of removal.

24              What -- let me ask you this:  Once

1  you get an order of removal, and he knew that he
2  had the order of removal after that 30-day period,
3  why shouldn't we assume that implicit in that is
4  notice that at any point in time following that
5  conversion he is subject to removal?
6           I know for -- there's a real fairness
7  argument there and I get that.  He's got a family.
8  He's been here for a long time.  But put the
9  fairness and equity argument aside for a moment.
10          Just in terms of pure law, why
11 shouldn't we assume that he knew that he was
12 subject to removal at any time after that 30-day
13 voluntary removal didn't happen?
14          MS. GLOVER:  Right.  So there's two
15 points here.  The first is the fact that he was
16 under an order of supervision and had been under
17 an order of supervision for ten years, since 2009,
18 and as a result, he was operating under a
19 situation where was attending regular check-ins,
20 and, you know, there's no dispute that he attended
21 every single one.  He checked in with ICE.
22          And under those circumstances, he
23 was essentially given -- sort of the due process
24 argument that we've presented is that he has -- he

advanced
depositions
Nationwide Court Reporting & Trial Support
855-204-8184 • www.advanceddepositions.com

6

1  was given -- he was given the ability to depend

2  upon the fact that he was asked to come into ICE.

3              He was asked to check in under that

4  order of supervision, and there was some

5  obligation from ICE to provide some notice that

6  they weren't going to simply detain him at that

7  check-in, which he had attended for ten years.

8              And so he was operating under

9  permission from the Government to live in the

10 United States, despite the fact that he had a

11 final order of removal, and the regulations that

12 the Government promulgated that govern that order

13 of supervision require some type of notice and

14 informal review --

15             JUDGE MCKEE:  Why would -- how is it

16 -- you used the term "permission."  He's operating

17 under the -- he was here pursuant to the

18 Government's permission, and that's how he was --

19 and he had the continuing order of supervision.

20             But that -- one might assume, in good

21 faith, that once you get that continuing order of

22 supervision, that you're here until you're then

23 told, get your affairs in order.  Next time you

24 report, we're going to detain you.  And that's

advanced
depositions
Nationwide Court Reporting & Trial Support
855-204-8184 • www.advanceddepositions.com

1  kind of what your position is, that equity

2  requires that -- due process requires that, I'm

3  sorry.

4          But again, isn't there some

5  underlying implicit, maybe constructive knowledge,

6  that you can be detained at any time.  You go

7  into -- to report, and at any one of those monthly

8  reporting sessions, you could be detained.

9          Is that -- and that may well be Mr.

10  Sampat's argument.  I hope I'm pronouncing that

11  correctly.  But what's wrong with that?  That's

12  what I'm missing.  Why does it -- why does it rise

13  to the level of a constitutional deprivation?

14          MS. GLOVER:  Right.  So in this case,

15  there's sort of -- you know, the second point is

16  the fact that there is a provisional waiver

17  process that he was in the midsts of pursuing.

18          So in this case, Mr. Tazu was in the

19  process of pursuing a process which deportation

20  would fundamentally and completely deprive him of,

21  and in this case, by not providing him notice, by

22  not providing him the opportunity to put his

23  affairs in order, by not providing him the

24  opportunity to have the ability to contest that

1  revocation of order of supervision and ultimate

2  detention and then deportation, he was not

3  provided the ability to gather his -- he was not

4  provided the ability to gather his affairs in

5  order, both for his family, but also in order to

6  contest the order of supervision.

7           There's actually no dispute still

8  that ICE has failed to follow its own regulations,

9  has not offered him -- has not sent him informal

10 notice of revocation -- informal notice of a

11 hearing to discuss the revocation of the OSUP, has

12 not provided him an opportunity to contest that

13 order of supervision, despite the fact that we've

14 been arguing this for the past year and half now.

15           JUDGE FUENTES:  You make

16 (indecipherable) -- you make it sound as if his

17 removal was totally arbitrary, but wasn't there an

18 underlying reason why -- why the Government sought

19 his removal at the time that it did?  Did he

20 comply with all regulations, for example?

21           MS. GLOVER:  So I'm not sure -- so,

22 as far as we know, there's absolutely no

23 explanation that he has been -- explanation for

24 his removal at the time that he was detained,

1  other than the fact that he was subject to a
2  final order of removal.
3             And that is the exact, precise factor
4  or characteristic that makes him eligible for the
5  I-601A, so Respondents are essentially -- in other
6  words, using the reason that Mr. Tazu is able to
7  pursue relief under their regulations as the sole
8  basis to deprive him of access to that relief.
9             And we think (indecipherable) --
10            JUDGE FUENTES:  What is that
11  (indecipherable), what is that regulation that
12  you're referring to, regulation that deprives
13  him -- that you mentioned that the Government
14  violated?
15            MS. GLOVER:  So there's -- there's
16  two regulations that are at issue here.  The first
17  is their regulation of the provisional waiver
18  process which is 212.7, and that is the regulation
19  that governs the I-601A process.
20            JUDGE FUENTES:  Is that E3 or E4?
21  (Indecipherable) two subparts there, is it 212.7E3
22  or 212.7E4?
23            MS. GLOVER:  So that is E4.
24            JUDGE MCKEE:  Okay.

advanced
depositions
Nationwide Court Reporting & Trial Support
855-204-8184 • www.advanceddepositions.com

1              MS. GLOVER:  So in this case this is

2    an -- this is a regulation that created in 2016

3    the ability for individuals who do not -- who are

4    subject to a final order of removal, who have been

5    in the United States to stay in the United --

6              JUDGE FUENTES:  (Indecipherable)

7              MS. GLOVER:  -- to pursue -- sorry.

8              JUDGE FUENTES:  Does that regulation

9    compel the Government to guarantee his stay here

10   while his application is pending?

11             MS. GLOVER:  So our position is that

12   it does, because removing Mr. Tazu on a sole basis

13   that he has a final order of removal deprives him

14   of the benefit of that regulation; deprives him of

15   the -- and I think more importantly, under Leslie

16   we have identified a situation where the

17   Government is not abiding by its own regulations.

18             So the Government here has vested

19   exclusive jurisdiction to make decisions over

20   these applications and to offer these applications

21   in the USCIS.  That DHS through ICE is depriving

22   USCIS of its ability both to offer and to

23   adjudicate those applications.

24             There's two --

11

1          JUDGE BIBAS:  That would seem to

2     (indecipherable) with which suit we're in.

3               Now, talk to us about the status of

4     the suit that is now in the Second Circuit.  This

5     one that's before us today is an appeal from a

6     habeas petition, but there's also the motion to

7     reopen, so this one came from a District Court up

8     to the Court of Appeals, but there's also a motion

9     to reopen in the Second Circuit.

10              Describe the status of that -- of

11    that suit and tell us whether you have asked that

12    Court for a stay.

13         MS. GLOVER:  Right.  So the status of

14    that suit is that it is currently in -- it is up

15    in the Second Circuit with a petition for review

16    of the denial from the BIA.

17              We have asked that Court for a stay,

18    and the Government in that -- consistent with the

19    forbearance policy in the Second Circuit did not

20    contest that.  But there's no order for a motion

21    to stay but --

22         JUDGE BIBAS:  Through the conclusion

23    of those proceeding, right?

24         MS. GLOVER:  Yes.

1          JUDGE BIBAS:  That's the Second

2   Circuit standard operating policy.  There's no

3   reasons for them not to follow it.

4          MS. GLOVER:  Yes.

5          JUDGE BIBAS:  Now, that suit, you're

6   raising an ineffective assistance of counsel

7   Lozada argument in that suit, right?

8          MS. GLOVER:  Yes.

9          JUDGE BIBAS:  Right.  So why is this

10  the right suit in which to approach these issues?

11  I mean, this is a habeas suit and the Real ID Act

12  of 2005 in response to St. Cyr said that

13  (indecipherable) you know, it -- it tried to

14  exclude habeas as a vehicle for relief.

15          These cases are supposed to come

16  through the agency to the Court of Appeals on a

17  petition for review.  The Second Circuit one is in

18  that proper procedural posture.  This one isn't.

19          So why -- why is this even properly

20  before us to be hearing the validity of these

21  rules on the habeas suit where the sole remedy

22  under Thuraissigiam is a release from custody, but

23  your client is not seeking release from custody.

24  He's seeking a right to stay here and not released

ad advanced
depositions
Nationwide Court Reporting & Trial Support
855-204-8184 • www.advanceddepositions.com

1  into the cabin of a plane bound for his home
2  country.
3          MS. GLOVER:  Right.  So I think
4  there's -- there's a couple of points to make
5  first in terms of substantively -- substantively
6  the claims before the Second Circuit and here are
7  different.
8          The claim before the Second Circuit
9  is that the order of removal, the final order of
10 removal is invalid, and that as a result of very
11 severe ineffective assistance of counsel, the
12 immigration proceedings should be reopened.
13         The issue here is that regardless of
14 whether or not the final order of removal is valid
15 or invalid, the method by which Respondents have
16 attempted to detain and remove Mr. Tazu violate
17 both the APA and the due process.
18         Those are claims that simply can't
19 be heard in the motion to reopen process.  Those
20 are claims that the BIA is not -- does not have
21 jurisdiction to consider because they are not
22 going to the validity of the final order of
23 removal, so importantly the issue is --
24         JUDGE BIBAS:  This connects up to

1  Judge Fuentes' question.

2             Your client -- if this is just about

3  the APA, your client could litigate these claims

4  from his home country, right, but it's not.  He

5  doesn't want to be released into a plane to his

6  home country, he wants to use a habeas petition to

7  stay here, but that's not -- under Thuraissigiam,

8  that's not what a habeas petition is supposed to

9  be doing.

10            MS. GLOVER:  So I think -- so again,

11 there's sort of two points.

12            The first is that he doesn't actually

13 want -- he can't actually litigate these claims

14 outside of the United States because the precise

15 basis for our argument that the detention and

16 removal of our client is unlawful is that by

17 taking him outside of the United States, it

18 deprives him of the ability to pursue these

19 provisional waiver process applications.

20            It deprives him of the ability to

21 file an I-601A because the regulations were

22 specifically amended when creating that to state

23 that nobody can apply for them outside of the

24 United States.

1              So this isn't a situation where he's

2    saying, I'd like to stay in the United States

3    simply so I can pursue my -- my immigration

4    proceedings.  He's saying that, I cannot seek this

5    relief in any other way at any other time.

6              And secondly, Thuraissigiam is -- I

7    mean, I think we identified this in the letter to

8    the Court in the response to the Government's

9    letter, but importantly, that case was explicitly

10   limited by the Supreme Court.  It was explicit --

11   that case was fundamentally different on the

12   facts.

13             We had a situation where a man had

14   just walked over the border.  He had entered by

15   what, 25 yards, and in this case this man has been

16   in the United States.  He was not subject to

17   expedited removal, which again the Supreme Court

18   limited its reasoning to in Thuraissigiam.

19             And then, importantly here too, the

20   challenges that Mr. Tazu is raising are to the

21   legal authority to exercise discretion, not to --

22   the precise exact relief that he is asking for is

23   to remedy constitutional violations, and --

24             JUDGE FUENTES:  How do you -- how do

1   you confront Section 212.7?  That's 8 CFR 212.7.

2   It's the -- the agency is interpreting its own

3   regulation to provide no right to a stay of

4   removal.  How do you deal with that one?

5           MS. GLOVER:  Right.  So there are a

6   couple of different -- I mean, there are sort of

7   multiple points here, and I'd just like to go

8   through them each in succession.

9           The first is that as the Jimenez

10  Court, and I think we sort of pointed this out

11  in our briefing, but as the Jimenez Court

12  carefully walked through, that language does not

13  actually -- that language does not actually refer

14  to a stay of removal.  It is a stay under a

15  specific separate subsection of the regulations.

16          JUDGE FUENTES:  That's the

17  Massachusetts -- the Massachusetts case?

18          MS. GLOVER:  Yes.  Right.

19          JUDGE FUENTES:  All right.

20          MS. GLOVER:  And it walks through the

21  analysis in that that -- that subsection referring

22  to its stay is referring to a separate aspect of

23  the regulations that say -- that essentially mean

24  this doesn't create lawful status in the United

advanced
depositions
Nationwide Court Reporting & Trial Support
855-204-8184 • www.advanceddepositions.com

1   States, so it's a way of articulating that this is

2   not an ability to change your status.

3              It does not actually say that this

4   doesn't constitute a stay of removal authorized

5   by the Secretary, and again, as the Jimenez Court

6   pointed out, the Respondents knew how to create

7   that type of restriction when they wanted to.

8              Another point that's important to

9   think about here is the fact that in the

10  regulations that discuss that, there -- there's

11  no other language anywhere else that says that

12  this doesn't constitute a stay of removal.

13             And so the only other way that the

14  District Court and the Government have attempted

15  to import that in regulations that do not say that

16  is by pointing to the interpretation of the

17  regulations in 2013.

18             The interpretation of the regulations

19  in 2013 do not govern the language at issue here

20  because the language at issue here was created in

21  2016 and is specifically relevant and specifically

22  related to an individual who cannot pursue this

23  process outside of the United States.

24             And, in those regulations, the -- the

1   2016 explanation of the regulations explained that

2   they amended the regulation specifically to make

3   clear that jurisdiction to both offer and govern

4   and adjudicate these applications was vested in

5   the USCIS.

6                   So I think it's important to make

7   sure we read the regulations as they're actually

8   written and read the interpretations of those

9   regulations that actually apply.

10                  JUDGE BIBAS:  Ms. Glover, could we

11  talk about the regulatory process.  There are

12  three steps your client needs to go through.

13                  He's already gotten past the first

14  step, the Form I-130, correct?  He's filed the

15  I-130 and he has an I-212 application.  Now, that

16  hasn't been granted.  Is that -- was that denied

17  or is that still pending?

18                  MS. GLOVER:  So that was denied.  We

19  received the --

20                  JUDGE BIBAS:  Well, (indecipherable)

21  can't file for the I-601 until after the I-212.

22                  If the I-212 has been denied, you're

23  asking for us to keep alive a space for him to

24  complete a three-step process when he's been

1    kicked out at step two, so you want a right to go
2    back and redo this whole process.  It's not like
3    step two is still pending, right?
4              MS. GLOVER:  So our position is that
5    step two is still pending.  You know, as an
6    initial matter --
7              JUDGE MCKEE:  Wait, I thought you
8    just said it was denied.
9              MS. GLOVER:  So it was denied, but
10   he's appealing.
11             JUDGE MCKEE:  I see.
12             MS. GLOVER:  And -- and so our
13   position is that in the specific circumstances of
14   how 601A functions, because deportation would
15   deprive him of the ability to file that I-601A,
16   exhaustion of the I-212 process includes the
17   appeal, and, you know, we are happy to provide
18   additional briefing on this.
19             We just got the actual denial last
20   Friday, I think, when we -- the same day that we
21   alerted the Court to that denial, so we're happy
22   to provide additional briefing on the effect of
23   this.
24             But our point is, you know,

advanced
depositions
Nationwide Court Reporting & Trial Support
855-204-8184 • www.advanceddepositions.com

1   importantly that denial, just as a matter of fact,
2   was on the basis of the fact that he had a final
3   order of removal and had stayed in the United
4   States.  So the exact basis again, which makes him
5   eligible to file an I-601A, which was created for
6   individuals like him in 2016, is the basis upon
7   which they denied him the I-212.
8               So we believe we have a strong basis
9   for the appeal.  We think that the denial was
10  arbitrary and capricious, and we believe that he
11  will have an ability to overturn that denial, and
12  so --
13              JUDGE BIBAS:  (Indecipherable) a
14  question.  It sounds like then under that basis
15  for denial that he can't get this relief until
16  after the Second Circuit case leads to a favorable
17  outcome.
18              But why is this not a matter for the
19  Second Circuit in the administration, if they find
20  ineffective assistance of counsel or some basis
21  for invalidating the removal order, then they can
22  consider whether to delay the issuance of the
23  mandate or grant a further stay or some other
24  follow-on relief, but it doesn't seem like

1  something that we -- relief is before us.

2                I found it very strange, by the way,

3  that the District Court reported to opine on the

4  motion to reopen before the Third Circuit -- that

5  is before the Second Circuit, that seems like it

6  was beyond their jurisdiction.

7                It seems like it's beyond our

8  jurisdiction to be trying to rectify something

9  where the root problem you're pointing to or the

10 root obstacle is now properly before the Second

11 Circuit.

12               Why should we be intervening here at

13 all?  The District Court didn't have jurisdiction

14 to say that, did it, and how -- how -- at least as

15 a matter of comity, shouldn't we keep our hands

16 off?

17               MS. GLOVER:  Right.  I mean -- right.

18 So I understand -- there is -- there have been

19 cases that have distinguished in -- between the

20 jurisdiction over cases like the -- the challenges

21 that Mr. Tazu is raising to the due process,

22 violations and APA violations with regard to the

23 provisional waiver process, and then the

24 jurisdiction over the motion to reopen.

1      Our position is still that there is
2  jurisdiction over not the motion to reopen, but
3  the attempted removal before that motion to reopen
4  was completed because they're based and grounded
5  in the same due process violations that we
6  articulate in the provisional waiver process.
7      That said --
8      JUDGE MCKEE:  Ms. Glover, your time
9  is up but I'm -- I'm troubled by the -- if the 212
10 has been denied, and that wasn't somehow as it
11 were any of us were aware of it until you just
12 mentioned that, what -- we cannot do anything
13 anyhow, can we, until we see the result of that --
14 even if you're right in all your other arguments
15 and we have the jurisdiction, otherwise, we can't
16 do anything while that appeal of the 212 denial is
17 pending, can we?
18      What can we do -- no matter what we
19 do, if the appeal of the 212 is lost, he's then
20 kicked out of the three-step process.  As Judge
21 Bibas said, at step two, isn't this premature for
22 us to try to get involved until that appeal?  The
23 Second Circuit even complicates that further
24 because -- I think Judge Bibas is right there.

23

1           But that -- that concerns me.  I'm
2   just    not sure what we can do with an
3   outstanding 212 appeal.
4           MS. GLOVER:  So just to -- I
5   apologize if -- so we sent a letter, just to
6   correct -- or not -- to make clear that, you know,
7   we -- we filed a letter I think last Friday on the
8   day that we received the denial, so you know, I
9   apologize if that didn't somehow get --
10          JUDGE MCKEE:  That may be my fault.
11  You know, it's probably with the clerk and I
12  probably didn't see the email.  Don't worry about
13  that.
14          MS. GLOVER:  Okay.  But -- but just
15  in terms of the -- sort of the substantive point
16  that you've raised, you know, our position is
17  still to reiterate that exhaustion of the
18  process -- until exhaustion of the process is the
19  issue here, exhaustion of --
20          JUDGE MCKEE:  Yes, but exhaustion
21  means appealing the denial of the 212.
22          MS. GLOVER:  Right.
23          JUDGE MCKEE:  It seems like you're
24  caught in a trap there, because I understand you



1  want to exhaust, but it seems to me that means
2  that we can't do anything until we have -- see
3  what happens on the 212 appeal.
4                 I mean, if it's successful there,
5  then these whole issues may well be ripe again,
6  and I assume he'll then go to the third step, and
7  then he may or may not win there.  If he does win,
8  then he's home free.  If he doesn't, maybe we're
9  back here.  I don't know, but you reserved -- you
10 did reserve some time, I think, two minutes?
11                 MS. GLOVER:  Yes, sir.
12                 JUDGE MCKEE:  Ok.  Any other
13 questions, Judge Bibas and Judge Fuentes?
14                 JUDGE FUENTES:  Yes, just a quick
15 one.  I -- I you know, just based on what Judge
16 McKee said, I -- I mean, if we go forward with
17 your request here, we -- I mean, there's a strong
18 possibility we may end up with inconsistent
19 decisions, totally inconsistent.
20                 We may agree and they may disagree,
21 so isn't the most prudent course to wait and see
22 what the Second Circuit says?
23                 MS. GLOVER:  So I guess I -- our
24 position would not -- would be that there would

1  not be an inconsistency in decisions largely

2  because the substantive issues that -- that we're

3  sort of presenting before the Third Circuit are

4  different from those both in the I-212 process and

5  in the -- and in the Second Circuit.

6             The issue before the Second Circuit

7  is whether his motion to reopen can be equitably

8  tolled based on ineffective assistance of counsel.

9             JUDGE MCKEE:  You want to go all the

10  way back to day one, basically.

11             MS. GLOVER:  Right.

12             JUDGE BIBAS:  The Second Circuit

13  would wipe the slate clean

14             MS. GLOVER:  Right.

15             JUDGE BIBAS:  -- and start the

16  process anew.

17             MS. GLOVER:  And all we're asking for

18  here, and -- is what we believe is correct, is

19  that Mr. Tazu has a right to stay in the United

20  States pending specific discrete and frankly short

21  process.

22             And that is not inconsistent --

23  whether he is allowed to stay in the United States

24  to finish that is not -- you know, a yes or no on

1   that does not conflict with whether his final

2   order of removal is invalid because that -- the

3   validity of his final order of removal is not at

4   issue here.

5          And also, whether or not the appeal

6   of the I-212 denial is granted, the issue there is

7   whether or not Mr. Tazu is eligible for or should

8   be given that I-212.  It is not whether he should

9   be allowed to stay in the United States to finish

10   the process.

11          So, you know, our position is that

12   there wouldn't be any inconsistency between those

13   three questions.

14          JUDGE MCKEE:  Okay.  If we -- go

15   ahead.

16          JUDGE FUENTES:  No, I'll hold off.

17   It's okay.  Rebuttal.

18          JUDGE MCKEE:  Okay.  Okay.  Thank

19   you.  We're way over.

20          Mr -- am I pronouncing it

21   incorrectly, is it Sampat, is that correct?

22          MR. SAMPAT:  Sampat, Your Honor.

23          JUDGE MCKEE:  Say it again, please.

24          MR. SAMPAT:  Sampat.

advanced
depositions
Nationwide Court Reporting & Trial Support
855-204-8184 • www.advanceddepositions.com

1        JUDGE MCKEE:  Sampat.  Okay.

2        Go ahead.

3        MR. SAMPAT:  Thank you, Your Honor.

4  Good morning, and may it please the Court, Dhruman

5  Sampat on behalf of the Appellees.

6        Petitioner here is seeking review of

7  the Government's discretionary decision to execute

8  a lawful removal order after he failed to depart

9  the United States 17 years ago and has waited

10  years to pursue the motion to reopen and the

11  provisional waiver -- unlawful presence waiver.

12        As this Court has questioned

13  Petitioner's counsel, there are four separate

14  jurisdictional issues present in this case.  The

15  first is that there is no judicial review of the

16  discretionary decision to execute a removal order.

17        JUDGE BIBAS:  This is 1252 (g).

18        MR. SAMPAT:  That's correct, Your

19  Honor.

20        The second is that the APA cannot be

21  used to review both a decision that is left to the

22  Agency's discretion, nor can it be used to review

23  a decision that Congress has expressly precluded

24  from judicial review as it has in 1252(g).

1            As -- as Judge Bibas noted during

2    questioning, Petitioner's motion to reopen claims

3    are barred by 1252(a)(5) and (b)(9) which channel

4    the questions of law and fact to the Court of

5    Appeals through the PFR process.

6            And finally, Petitioner's invocation

7    of the suspension clause cannot hold because the

8    writ of habeas corpus is meant to secure release,

9    and as Petitioner admits in his opening brief and

10   reply brief, he is no longer seeking simply

11   release from custody.

12            JUDGE FUENTES:  Can -- can we review

13   a decision that is clearly arbitrary and

14   capricious?  If we --  if we made that

15   determination, could we review the decision?

16            MR. SAMPAT:  Your Honor, I think it

17   would depend on what decision that is that is

18   arbitrary and capricious, because if it's the

19   decision to execute a removal order, that decision

20   is barred from review under 1252(g), so --

21            JUDGE BIBAS:  So if we are -- does

22   your position here that this is about executing a

23   removal order require us to shield from review

24   decisions about detention or prolonged detention?

1          Help us to understand how you can win

2    without shielding large swaths of this process

3    from judicial review.

4          MR. SAMPAT:  Well, Your Honor,

5    detention and unlawful detention, prolonged

6    detention, are still proper before the Court and

7    can be reviewed, and Thuraissigiam does not

8    foreclose that, and, you know, Jennings and --

9    Jennings didn't invoke the suspension clause to

10   say that there was -- it was barred from review

11   there.  Nor does it do it here.

12          As -- as the Supreme Court said in

13   Thuraissigiam, the purpose of the writ of habeas

14   is meant to secure release, so if an alien, if an

15   individual has prolonged detention and that

16   detention now runs afoul of due process, that is

17   something that the Court would have jurisdiction

18   to review.

19          JUDGE BIBAS:  Now, where's the

20   limiting principle?  Because here, in order to

21   execute the removal order you picked up Mr. Tazu,

22   and, you know, takes three days, you've got to put

23   him on the plane.

24          Are those three days -- is there some

1  minimum period that's inherently bound up in an --

2  in an ordinary removal?  Like what -- what should

3  we treat as covered by that exception

4  (indecipherable) with respect to removal?

5             MR. SAMPAT:  Well, Your Honor,

6  Mr. Tazu was detained after ICE was able to secure

7  a travel document, so his detention at that point

8  was lawful in order to enforce the removal order,

9  and the regulations allow ICE to -- to revoke an

10 order of supervision in order to enforce a removal

11 order.

12            Now, prolonged detention is -- is

13 completely different.  You know, under Zadvydas,

14 for someone in Mr. Tazu's position, it would be,

15 you know, six months -- after six months of

16 detention, there's -- there's a question as to

17 whether or not his detention is -- his continued

18 detention would be warranted.  So that would be

19 the limiting principle.

20            JUDGE BIBAS:  Now, your adversary

21 says that under cases like Garcia that we have to

22 invoke (indecipherable) review whether there is

23 this question or authority here.  How do you

24 distinguish our -- our decision in Garcia?  Is

1    your adversary correct?

2              MR. SAMPAT:  Your Honor, I think

3    the way the Government answers that is that if

4    the question is whether or not ICE has legal

5    authority, it's simply reframing the discretionary

6    decision  as a legal question, and as the Second

7    Circuit noted in the Ragbir decision just last

8    year --

9              CLERK:  Excuse the interruption.  I

10   apologize for interrupting.  It looks like we've

11   lost Judge McKee, so if we could hold for just a

12   moment.

13             JUDGE FUENTES:  Oh, no.

14             MR. SAMPAT:  Sure.

15             CLERK:  Thank you.

16             Okay.  Judge McKee is coming back in.

17             JUDGE FUENTES:  Okay.

18             CLERK:  Hello again, Judge.

19             JUDGE MCKEE:  Hi.  I'm sorry.  I

20   missed about what, four or five minutes there?

21             CLERK:  Yes, we paused once I saw

22   that you disconnected.  We just don't have your

23   picture just yet.

24             JUDGE MCKEE:  All right.



advanced
depositions
Nationwide Court Reporting & Trial Support
855-204-8184 • www.advanceddepositions.com

1           Oh, I can fix that.  That's easy.
2           JUDGE BIBAS:  I was asking Mr. Sampat
3  about the understanding of discretion and what
4  discretion is reviewable, and we had this Garcia
5  decision that Ms. Glover cited that suggested that
6  whether we have authority to act or not, whether
7  the Government has authority to act under a
8  provision is reviewable, and Mr. Sampat was
9  beginning his response.
10           JUDGE MCKEE:  Thanks.
11           Mr. Sampat, go ahead.
12           MR. SAMPAT:  So in order -- you know,
13  if it's -- (indecipherable) that, you know, that
14  an individual would challenge the legal authority
15  for ICE to execute a removal order, the Second
16  Circuit addressed that exact question in Ragbir
17  and -- and said that there are just -- it would
18  basically just require a magic words test, which
19  would be that any claim could be just reframed as
20  a legal question and as to whether or not ICE has
21  a legal authority to execute the removal order.
22           And the second way to answer that,
23  Your Honor, is also that, you know, Mr. Tazu
24  concedes a very important point in that he has an

1  outstanding lawful final removal order, so ICE is
2  well within its authority --
3           JUDGE MCKEE:  She didn't concede it
4  was removal -- that it was lawful.  There's a --
5  there's an underlying challenge there to the
6  initial proceeding that led to that removal order,
7  based upon what appears to be a pretty strong
8  claim of ineffective assistance of counsel.
9           MR. SAMPAT:  And, Your Honor, up
10  until that motion to reopen is granted and
11  Mr. Tazu's proceedings are reopened, he has an
12  outstanding removal order that may be executed.
13           Now, as -- you know, as this Court
14  noted during -- during my colleague's time is that
15  all those questions are -- are supposed to be
16  channeled through the PFR process into the Second
17  Circuit and are now currently pending before the
18  Second Circuit.
19           JUDGE MCKEE:  So you don't have --
20  you would have no problem if we held this matter
21  CAV pending res -- two things I guess, pending
22  resolution of the Second Circuit's decision, and
23  also it seems to me it would be equitable at
24  least, and it may well be a legal argument that

advanced
depositions
Nationwide Court Reporting & Trial Support
855-204-8184 • www.advanceddepositions.com

34

1  Ms. Glover is making is valid, is that we hold off

2  any ruling until the appeal of the denial in step

3  two is adjudicated.

4         MR. SAMPAT:  Well, Your Honor, the

5  Government actually respectfully disagrees with

6  that.

7         JUDGE MCKEE:  What is wrong with the

8  Court waiting to see whether or not your own

9  agency will agree with Mr. Tazu and reverse the

10  decision in step two?  Help me understand, other

11  than just the fact a litigation posture, what is

12  wrong with doing that?

13         MR. SAMPAT:  Your Honor, the thing is

14  that Mr. Tazu now has -- has filed --

15         JUDGE MCKEE:  We understand -- we

16  understand all that.  The problem is, she has an

17  appeal pending of him getting kicked out at step

18  two.

19         If I were to stop the average sixth

20  grader on the street, explain the situation, and

21  say, gee, do you think that we ought to wait and

22  find out whether or not this guy -- the step that

23  he would -- well, he was kicked out at step two,

24  whether or not the Government decides, okay, we'll

advanced
depositions
Nationwide Court Reporting & Trial Support
855-204-8184 • www.advanceddepositions.com

1  let him proceed through the waiver process.

2              We're not talking about somebody

3  who's a member of La Cosa Nostra here.  This guy

4  has been here for a while.  He's got two kids.

5              As I said to some folks earlier, it's

6  almost like Kafka's -- the trial.  I mean, the guy

7  wakes up one morning except he was going to a

8  regular reporting order and he's taken into

9  custody with no warning at all.

10             He just -- he shows up, leaves his

11 wife and family, and goes to report, assuming he's

12 going to be back for lunch or dinner or whatever,

13 and he's hauled off to prison in New Jersey.  It

14 just -- that doesn't bother you in the slightest I

15 assume.

16             MR. SAMPAT:  No.  Your Honor --

17             JUDGE MCKEE:  Of course not.  Why

18 would it bother you?

19             MR. SAMPAT:  Your Honor, the

20 Government understands the potential issues and

21 the equities in this case and is well aware of the

22 posture of that.

23             However, Mr. Tazu has received the

24 relief that he's seeking which is a stay with the



1  Second Circuit, right, so that -- again, that is

2  the (indecipherable) the Second Circuit is the

3  proper forum in which to litigate these issues,

4  and he has -- he filed for a stay.

5          The Government in that proceeding

6  has filed an -- has not opposed the stay.  So

7  he's already received that relief, so there's

8  nothing -- there is -- the Government's position

9  here is that there's no jurisdiction to do

10 anything, because everything else is with the

11 Second Circuit and is proper within the Second

12 Circuit.

13         JUDGE MCKEE:  Okay.

14         MR. SAMPAT:  As for, you know, as for

15 Petitioner's APA claims, they're -- they're also

16 barred both because Congress has precluded them

17 from review and because through -- decision to

18 remove an individual is discretionary.

19         If I may just touch on a point that

20 Judge Fuentes made regarding the potential

21 inconsistent decisions between this Court and the

22 Second Circuit, and that's exactly why 1252(a)(5)

23 and (b)(9) have channeled those questions through

24 the PFR process, and the question about equitable

advanced
depositions
Nationwide Court Reporting & Trial Support
855-204-8184 • www.advanceddepositions.com

37

1 tolling is properly before the Second Circuit.
2             JUDGE MCKEE:  Anything further, Judge
3 Bibas?
4             JUDGE BIBAS:  (Indecipherable) no.
5             JUDGE BIBAS:  Let me ask, how do
6 you -- discuss how you think that fits with our
7 recent decision in EOHC.
8             MR. SAMPAT:  Well, Your Honor, in
9 EOHC, you know, the Court found jurisdiction
10 and -- and claimed -- and claimed saying it was a
11 now or never claim, so the way to -- the way the
12 Government would address that is that this is not
13 a now or never claim.
14             So that brings the Government to one
15 point which is that Petitioner has argued that he
16 would be deprived of the opportunity to seek a
17 provisional waiver if he was removed.  That's
18 actually not the case, Your Honor.
19             Petitioner can still seek a waiver of
20 inadmissibility from overseas.  So he could file
21 his 212, which has now been denied, even if we
22 assume had been granted, that -- that application
23 could still be filed overseas and go through
24 adjudication then.

1          So Petitioner is not without recourse
2  there, and he would not be deprived the
3  opportunity of seeking a waiver of inadmissibility
4  based on his unlawful presence in the United
5  States.
6          JUDGE FUENTES:  Well, in doing that
7  overseas, as I understand, it could take not just
8  months but years to get addressed.  It seems to me
9  more efficient if something like that were to be
10 done while he's in the States; isn't that correct?
11          MR. SAMPAT:  Your Honor, the
12 Government understands that, but there's a --
13 there's a couple of ways to answer that.
14          The first is that Mr. Tazu first
15 waited to seek this provisional waiver until he
16 was taken back into the custody.  The amendments
17 that allowed Mr. Tazu to be eligible, potentially
18 be eligible, were passed in 2016, and he did not
19 file any application until he was taken back into
20 custody in 2019.
21          JUDGE FUENTES:  Well, as I understand
22 it, as I recall, he had a serious problem with
23 counsel, and counsel was not attentive to the
24 process as he should have been.  Isn't that part

1    of the background here?

2              MR. SAMPAT:  Your Honor, the Court --

3    the Government does recognize that there's an

4    issue, potential issue of counsel, but again,

5    it's -- you know, it's on Mr. Tazu to seek and --

6    to seek forms of remedy and relief that he may be

7    eligible for.

8              JUDGE MCKEE:  Even if he's not aware

9    of them?

10             MR. SAMPAT:  I'm sorry?

11             JUDGE MCKEE:  Even if he's not aware

12   of them.  If prior counsel did not advise him of

13   it, he's nevertheless obligated to pursue

14   something he does not know exists.

15             MR. SAMPAT:  Your Honor, he is

16   pursuing them, but he does not necessarily have to

17   pursue them from the United States.  He can pursue

18   them from overseas.

19             JUDGE BIBAS:  And he has a Lozada

20   claim for ineffective assistance he can pursue.

21   Is -- would that part of the Lozada claim be

22   before the Second Circuit?

23             MR. SAMPAT:  I'm sorry, I'm not sure

24   I understand your question, Your Honor.

advanced
depositions
Nationwide Court Reporting & Trial Support
855-204-8184 • www.advanceddepositions.com

40

1           JUDGE BIBAS:  If counsel was
2  ineffective, in doing so, under Lozada, he could
3  still raise that as a claim as to why he should be
4  granted relief, not withstanding his counsel's
5  ineffectiveness, right?
6           JUDGE BIBAS:  Right.
7           MR. SAMPAT:  Right, and that would
8  be -- that would be brought up before the Second
9  Circuit.
10          So ultimately Petitioner's concern
11 is that -- is with the Government's decision to
12 execute a removal order.  As the Government argued
13 in its brief and here today, that runs afoul of
14 several jurisdictional bars, and therefore this
15 Court should find that the District Court
16 improperly exercised jurisdiction over
17 Petitioner's claims.
18          If the -- if the Court has no more
19 questions at this time, the Government rests on
20 its briefs.
21          JUDGE MCKEE:  Do you have anything
22 further, Judge Bibas, Judge Fuentes?
23          JUDGE FUENTES:  No, not from me.
24          JUDGE MCKEE:  Okay.  Ms. Glover, you

1  reserved a couple of minutes.

2  Do you agree -- let me ask, do you

3  agree that the ineffective assistance of counsel

4  claim is in fact before the Second Circuit?

5  'Cause that would seem to be the

6  easiest way to resolve this thing.  If counsel is

7  as bad as has been represented, and apparently the

8  immigration judge even, at some point, maybe the

9  BIA, commented on the incredibly bad

10  representation that your client had received, so

11  it's not just a make weight kind of claim.

12  If that came up before the Second

13  Circuit, that does seem to basically create a

14  whole new day for your client.  Is that claim

15  before the Second Circuit?

16  MS. GLOVER:  That claim is before the

17  Second Circuit, and you're right that Judge Salas

18  did note the extraordinary circumstances of this

19  case, of his case.

20  Our position is that, you know, the

21  questions at issue in the Second Circuit are

22  different from the questions at issue here in that

23  what we are asking for here is just exhaustion of

24  this I-212 process, this I-601A process, but if

42

1  the Court's position is that it should wait, our

2  position is that that makes sense.

3          JUDGE MCKEE:  You know, even if we

4  allow you to exhaust, let's assume that we allow

5  you to exhaust and you're denied the 212 appeal,

6  well, you're no better off than you are now, and

7  we could get into a situation where we say, Okay,

8  Ms. Glover is right, and let the case go forward.

9  You lose the 212 appeal.

10          Then the Second Circuit is in a

11  situation, well, yes, there was ineffective

12  assistance of counsel, but meanwhile, he hasn't

13  gone through the three steps necessary for

14  naturalization, so he's still gone.

15          That -- that really is a Kafkaesque

16  kind of posture.  Could that happen?  That does

17  seem possible.

18          MS. GLOVER:  Correct.

19          It seems -- I mean, it -- it -- I

20  think that's sort of the basis of our claim  here

21  is that there are these Kafkaesque processes

22  throughout in that there's this, you know, for

23  example, the specific creation of regulations to

24  benefit individuals specifically like Mr. Tazu,

1   and then that is the specific basis for removing

2   him.

3                    But, but I think you're right that

4   the -- the point here is that the Second Circuit

5   could completely kind of open up the entire case.

6   We think that the facts are extraordinarily strong

7   in Mr. Tazu's case.

8                    And you're right also that the

9   difference between today and, you know, a few

10  months from now, two months from now, however long

11  it takes the appeal process to be finished, that

12  sort of -- there's not a meaningful difference

13  between that time, and I think that it makes sense

14  to wait for those two processes to be done, at the

15  very least for the appeal process and the I-212 to

16  be done.

17                   There's no indication that Mr. Tazu

18  is in any way causing harm to anyone.  The waiting

19  of that extra couple of months is just a drop in

20  the bucket in comparison to the ten years that the

21  Government waited to attempt to deport him after

22  his OSUP.

23                   JUDGE FUENTES:  What -- I may have

24  missed it.  What is his current status?  I mean,

advanced
depositions

Nationwide Court Reporting & Trial Support
855-204-8184 • www.advanceddepositions.com

44

1 he's not -- he's not in detention, is he, or is he

2 being held in detention?

3                    MS. GLOVER:  No.  May 29th, I

4 believe, we secured the Government's agreement

5 to -- they stipulated to his release.

6                    JUDGE FUENTES:  He's out, okay.

7                    MS. GLOVER:  I think, you know, we --

8 I have no further points so unless -- obviously

9 happy to continue to answer questions, but no

10 other points.

11                    JUDGE MCKEE:  Okay.  I have nothing

12 further.  Judge Bibas?  Judge Fuentes?

13                    JUDGE FUENTES:  No, nothing further.

14                    JUDGE MCKEE:  I do want to thank you,

15 Ms. Glover, and your firm, for representing

16 Mr. Tazu pro bono.  It's a very important service

17 that you provide and these cases could not be

18 processed.

19                    The law here especially is so

20 complicated and so intricate, that if somebody

21 tries to dance through this web by themselves is

22 probably running a fool's errand, so you really do

23 need counsel to manipulate this maze, and we are

24 very appreciative to you and your firm, and could

1  you please take that back to whomever at the firm
2  is the one who's in charge of making these kinds
3  of decisions in terms of whether or not to
4  represent somebody.
5            MS. GLOVER:  Absolutely.  Thank you
6  very much, and I will do.
7            JUDGE MCKEE:  Thank you.
8            Thank you both for very helpful
9  argument.  We'll take the matter under advisement.
10            JUDGE BIBAS:  Sorry.  I've got one
11  last question for Ms. Glover, if -- if that's all
12  right.
13            JUDGE MCKEE:  Sure.
14            JUDGE BIBAS:  Ms. Glover, if -- your
15  position is you can't pursue this relief from
16  overseas.  If he can pursue it -- you know,
17  wouldn't that -- whatever due process already has
18  to be satisfied by being able to file the form
19  from overseas?  Is it -- explain how that -- how
20  that fits within your due process argument.
21            MS. GLOVER:  That's right.  I mean,
22  our -- our due process argument and our APA
23  argument are both grounded in the fact that he
24  cannot pursue this I-601A outside of the United

1  States.

2            I mean, I think it's important to

3  make a distinction between I-601A and I-601 which

4  I think the Court has already -- already

5  identified.  That the I-601A was specifically

6  created to reduce the amount of time that it took

7  people who were filing from abroad under the

8  I-601.

9            JUDGE BIBAS:  (Indecipherable) I

10 understand the time difference, but Mr. Sampat is

11 not incorrect that he can pursue the other form

12 from overseas.  601A is the expedited version but

13 he could still pursue a 601 from overseas.

14            MS. GLOVER:  That's correct.  It does

15 not -- it does not -- it does not change the fact

16 that a specific benefit created specifically for

17 him was deprived on the basis of the fact of the

18 key characteristic that makes him eligible for

19 that benefit, but it's correct that he could

20 pursue that from abroad.

21            JUDGE BIBAS:  All right.  Thank you.

22            JUDGE MCKEE:  Thank you very much.

23 We'll take the matter under advisement.

24            (Proceedings concluded.)

1                    CERTIFICATION

2

3          I, KATHLEEN McHUGH, a Registered

4   Professional Reporter and PA Notary Public, hereby

5   certify that I have truly and accurately

6   transcribed this proceedings to the best of my

7   ability.

8

9          I FURTHER CERTIFY that I am neither

10  attorney nor counsel for, not related to nor

11  employed by any of the parties to the action; and

12  further that I am not a relative or employee of

13  any attorney or counsel employed in this action,

14  nor am I financially interested in this case.

15

16

17

18

19

20  _____
    KATHLEEN McHUGH
21  Registered Professional Reporter
    and PA Notary Public
22

23

24



advanced
depositions
Nationwide Court Reporting & Trial Support
855-204-8184 • www.advanceddepositions.com